[Crim. No. 11962. First Dist., Div. Two. Apr. 1, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
CECIL E. LEE, Defendant and Appellant.

## COUNSEL

Sydney N. Tanner for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Derald E. Granberg and April P. Kestell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ROUSE, J.—Defendant appeals from the judgment of conviction[1] by jury verdict of second degree murder (Pen. Code, § 187) while armed with a deadly weapon (Pen. Code, § 12022). During the night, and after the first day of jury deliberations, the janitor threw away several exhibits of physical evidence introduced by the People. Defendant's contentions on appeal deal with this missing evidence.

Since defendant does not challenge the sufficiency of the evidence, we shall not set forth in detail all the activities which culminated in his conviction. Instead, we shall confine ourselves to a discussion of the events upon which he now bases his appeal.

Defendant contends that the action of the bailiffs assigned to the jury during its deliberations were in violation of his constitutional right to a fair trial; that the failure of the court to inform the jury of the loss of the physical evidence constituted prejudicial error; and, that the fact that at the time it denied defendant's motion for a new trial the trial court had before it the affidavits of the jurors relied upon in this appeal has no application to issues raised on appeal.

 Defendant's first contention is that section 1138 of the Penal Code[2] was violated when the bailiff in charge of the jury during its deliberations informed them, on the second day of deliberations, that the physical evidence which was previously in the jury's possession had been lost. He

---

[1]Defendant also purports to appeal from the denial of his motion for a new trial, which is nonappealable. (Pen. Code, § 1237.)

[2]"After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (Pen. Code, § 1138.)

argues that, instead, the bailiff should have returned the jury to the courtroom where the judge could then have explained the circumstances of this loss to them. He contends that his position on this issue finds support in the affidavits of two jurors, the contents of which were previously considered by the trial court at the time of its denial of defendant's motion for a new trial.

The record discloses that during the course of the trial several exhibits were admitted into evidence: People's Exhibit 1 consisted of two color photographs showing the location of the deceased's body inside the doorway of his apartment; Exhibit 2 was the murder weapon, a knife; Exhibit 3, two color photographs depicting the entrances and relative positions of apartments 303 and 304 including the damage to the lower portion of the door to apartment 303; Exhibit 4, two black and white photographs showing defendant with bandages on his head; Exhibit 5, a color photograph of the broken electric frying pan and its position when found by the police; Exhibit 6, a smaller picture of Exhibit 4; Exhibit 7, a chart marking the location of Exhibits 7-A through 7-D; Exhibit 7-A, a piece of metal and a piece of plastic from the broken electric frying pan; Exhibit 7-B, a fragment of plastic; Exhibit 7-C, a large single fragment of glass; Exhibit 7-D, pieces of plastic from the legs of the frying pan; Exhibit 8, an electric frying pan; and Exhibit 9, coroner's photograph of deceased showing the location of the stab wound. Various witnesses referred to the diagram and the photographs from time to time during their testimony.

The jury retired at 3:40 p.m. on Thursday, March 29, 1973, following a three-day trial. At that time all exhibits were taken into the jury room except the knife (Exhibit 2). At 4:58 p.m. the jury returned for further instructions on the definitions of murder and manslaughter. The jury resumed deliberations about 5:13 p.m. and continued to deliberate until 6:06 p.m., when it returned to the courtroom. At that time, the foreman indicated that they were in the process of counting the last ballot but were deadlocked. The jury was then sequestered for the evening. The court told them that "The exhibits and everything will be put in the sheriff's custody and retained until tomorrow morning."

During the night of March 29, the physical evidence that had been admitted into the jury room disappeared. The court's regular bailiff, who had been assigned temporarily to another case, noticed that the door to the jury room was ajar that night and that a frying pan was in the wastebasket. Not knowing that it was evidence in a case, he secured the door. The night janitor had cleaned the room, throwing the evidence away. The garbage company had already picked the exhibits up, taking them to the dump in Mountain View. The exhibits thrown out included all of the physical evidence except the knife (Exhibit 2), which had not been taken into

the jury room, and two charts on a wall (People's Exhibit 7 and Defendant's Exhibit B).

At 10:40 a.m. on the morning of March 30, the jury returned for further instructions on the definition of malice. Nothing was mentioned about the missing evidence at that time by either the court, the jury, or counsel. At 10:42 a.m. the jury resumed deliberations. At 11:20 a.m. the jury returned with a verdict of guilty of second degree murder, with a finding that the deadly weapon allegation was true.

Defendant's present counsel entered the case after the trial had been completed. He made a motion for new trial on behalf of the defendant, basing said motion on grounds of newly discovered evidence and prejudice caused by loss of the exhibits. Included in the latter ground was the allegation of improper communication with the jury by the bailiffs.

Defendant's "newly discovered evidence" was based upon a belief that the victim was on parole for murder. From a discussion between court and counsel on this latter point (as set forth in the transcript of proceedings at the hearing on defendant's motion for a new trial), it appears that the victim's criminal record had been made available to and was examined by trial counsel in sufficient time to permit its use at trial. Although defendant is somewhat vague on this point in his brief on appeal, we conclude that any contention that he was somehow prejudiced by the court's ruling on this matter is without merit.

Information contained in the two jurors' affidavits constitute the basis upon which defendant argues that the lost evidence and the bailiffs' communication to the jury concerning same prejudiced his right to a fair trial.

In her affidavit, juror Judith Gillum declared that she did not recall how many of the jurors actually looked at the physical evidence on the first day of deliberation. After the first ballot, the jury was divided with four for manslaughter, seven for various degrees of murder, and one for acquittal. She further stated: "At the beginning of deliberations of Friday, March 30, 1973, the physical evidence was not present in the jury room and a request was made through the chairman for its return. My recollection was that all of the jurors desired to examine the physical evidence, and especially the photographs of the victim, the defendant and the location prior to continuing their deliberations. After a short wait during which we received no response from the bailiffs, Mr. Campbell suggested that we continue with our deliberations until the physical evidence arrived. We were later informed by the bailiffs that the physical evidence could not be found or had been lost. Several jurors, including myself, then asked if the photographs could be reproduced. There appeared to be some con-

fusion about the locations of the blood, grease, broken glass, and parts of the broken skillet at the scene of the incident. I was particularly concerned about the missing photographs, as I felt their presence would assist me in presenting my views and impressions to the remaining members of the jury. There was also confusion as to the path of entry of the knife into the victim's body."

The affidavit of Ernesto Delbarrio generally corroborated Judith Gillum's statements. He did not recall that the bailiffs said the evidence had been misplaced or lost, but he stated that "We were informed by the deputies something to the effect that the judge was busy, or the district attorney or defense counsel could not be located."

It is the position of the Attorney General on this issue that the trial court, having read and considered the foregoing affidavits in support of defendant's motion for new trial, decided the factual issue of whether the bailiffs made any statement to the jurors. Thus, he argues, the trial court's ruling against the defendant on such motion should not be disturbed on appeal absent a showing of a clear abuse of discretion. (*Bardessono* v. *Michels* (1970) 3 Cal.3d 780, 795-796 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717]; *People* v. *Aeschlimann* (1972) 28 Cal.App.3d 460, 471-472 [104 Cal.Rptr. 689].)

We agree with this position, since it clearly appears from the record on appeal that the trial court fully considered this issue at the time of defendant's motion for new trial and made a determination thereon. However, in order to put this matter at rest we shall deal with the question on the merits by assuming, for purposes of further discussion, that the trial court's ruling on the motion for new trial did not foreclose the issue of whether or not the bailiffs' conduct prejudiced defendant's right to a fair trial.

In *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], our Supreme Court held that jurors' affidavits were competent "to prove objective facts to impeach a verdict under section 1150 of the Evidence Code." (P. 351.) The objective facts which may be shown are those only "open to sight, hearing, and the other senses and thus subject to corroboration." (P. 350.) But jurors' affidavits remain incompetent to prove the subjective reasoning process which can be neither corroborated nor disproved. (P. 349.) "This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or fellow jurors' mental processes or reasons for assent or dissent." (P. 350.)

It is improper for the jury to have any private communication with the court or other persons. Ordinary procedure would require that the trial judge afford the parties an opportunity to be apprised of such communica-

tion and to have the opportunity to make timely objection to that which might be deemed irregular. (*People* v. *Alcalde* (1944) 24 Cal.2d 177, 189 [148 P.2d 627]; Witkin, Cal. Criminal Procedure (1963) §§ 519, 521, pp. 529-530, 531-532.)

Prejudice to the defendant must be demonstrated, however. (*People* v. *Alcalde, supra; People* v. *Weatherford* (1945) 27 Cal.2d 401, 418-419 [164 P.2d 753].)

■ The Attorney General contends that defendant has not made a showing that section 1138 of the Penal Code was violated because only hearsay supports the alleged facts and that no exact disagreement among the jurors is set forth. (*People* v. *Stafford* (1973) 29 Cal.App.3d 940, 944 [106 Cal.Rptr. 72].) In addition, in the cases cited by the defendant in support of his position, namely, *People* v. *York* (1969) 272 Cal.App.2d 463 [77 Cal.Rptr. 441], *Smith* v. *Shankman* (1962) 208 Cal.App.2d 177 [25 Cal.Rptr. 195], and *Halada* v. *Venice Lake Park, Inc.* (1955) 132 Cal.App.2d 788 [283 P.2d 42], there was no issue as to what the bailiffs had said. Here, there is no affidavit from the bailiffs and the two jurors' affidavits do not clearly set forth exactly what was said to them.

The jury saw all of the exhibits as they were introduced and commented upon during the trial. At the end of Officer Henry's testimony, People's Exhibits 1 through 5 were then passed to the jury. The record then states: "(Inspected by the jury)." While the record does not state whether the other exhibits were so examined by the jury during the trial, those exhibits added little to what was included in Exhibits 1 through 5. Exhibit 6 was a smaller picture of Exhibit 4; Exhibit 7, the chart, was in the jury room at all times; Exhibits 7-A through 7-D were only fragments of glass and plastic already marked on the chart (Exhibit 7); Exhibit 8, the frying pan, was depicted in Exhibit 5; and Exhibit 9 showed only the location of the victim's wound.

Furthermore, the jury had access to these exhibits on the first day of deliberations from at least 3:40 p.m. to 4:58 p.m. and from 5:13 p.m. to 6:06 p.m. On the second day of deliberations, only Judith Gillum held out for a manslaughter verdict. In her affidavit, she expressed thoughts shared by a "number of jurors" that the pictures would have helped clarify how the knife entered the victim, but this statement is incompetent to impeach a verdict under *People* v. *Hutchinson, supra.* At any rate, Exhibit 9, showing the knife wound, is of no aid on this point.

The jury clearly had the issue of manslaughter versus murder in mind and on the second day, at 10:40 a.m., they returned for further instruc-

tions on the definition of malice. At that time, the jury did not mention anything about the lost evidence. The jury reached a unanimous decision at 11:20 a.m.

No showing has been made that the evidence would have helped the defendant in any way. The jurors' affidavits do not claim the result would have been different. The exhibits involved were extremely bloody pictures of the victim and scene. It appears from the record that the court and district attorney were in the process of reproducing the photographs when the verdict came in. It has been held that during a reasonable delay in obtaining evidence which it wishes to consider, the jury may continue its deliberations and reach a valid verdict without the evidence it has previously requested. (*People* v. *Stafford, supra,* pp. 944-945, and cases cited therein.)

In fact, this court's request for the exhibits in the case produced Exhibits 1, 5, 6, 7 and 9.

We conclude that any misconduct of the bailiffs must be considered harmless since the likelihood of material influence is not within the realm of reasonable possibility. (*People* v. *Haston* (1968) 69 Cal.2d 233, 252-253 [70 Cal.Rptr. 419, 444 P.2d 91]; *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

■ Finally, defendant contends that the trial court had a duty to inform the jury that the physical evidence was lost and that failure to do so constituted prejudicial error.

The record is clear that the court was aware that the exhibits had disappeared from the jury room either during the nighttime of March 29 or the early morning hours of March 30. It appears from the record that the court failed to inform the jury of the loss of the physical evidence; nor did it ever inquire as to whether or not they could continue their deliberations without it, even when the jury returned at 10:40 a.m. on Friday, March 30, for further instructions on the definition of malice. On the other hand, the record is also clear that no request for return of the evidence had ever been communicated to the court by the jury, even though such opportunity to do so clearly presented itself when they returned to the court at 10:40 a.m. for further instructions.

Although, in retrospect, it may have been better practice for the court to have informed the jury concerning the loss of the evidence, explaining that the photographs could be reproduced if needed (e.g., *Asplund* v. *Driskell* (1964) 225 Cal.App.2d 705, 713 [37 Cal.Rptr. 652]; *Smith* v. *Shankman, supra; James* v. *Key System Transit Lines* (1954) 125 Cal.

App.2d 278, 283 [270 P.2d 116]), we find no authority compelling the court *sua sponte* to inform the jury of a problem which to all appearances was one which they had not encountered. (See *People* v. *Gordon* (1963) 222 Cal.App.2d 687, 689 [35 Cal.Rptr. 335], where it was held that the trial court does not have to order the reading of any part of testimony which is not requested by the jury.) In any event, for reasons previously set forth herein, we find no prejudice to the defendant in this instance.

■ Although not specifically identified as an issue on appeal, the defendant contends that the destruction of the exhibits was a denial of due process and thus he was deprived of a fair trial.

Section 1137 of the Penal Code provides that the jury may take all papers which have been received in evidence with them for deliberations, but what may be so taken is left to the sound discretion of the trial court. (*People* v. *Walker* (1957) 150 Cal.App.2d 594, 603 [310 P.2d 110].) The trial court did not deny the jury any exhibits except the murder weapon; all others were taken into the jury room. The record shows that the court was attempting to locate the missing evidence and the district attorney was getting duplicate copies of the photographs.

The matter of the disappearance of physical evidence during jury deliberations is one of first impression. It must be pointed out that the prosecution need not present all evidence that may have been discovered in the case "so long as the material evidence relating to the charge against defendant is produced in a manner according him a fair trial." (*People* v. *Moran* (1970) 1 Cal.3d 755, 761 [83 Cal.Rptr. 411, 463 P.2d 763].) Thus, the exhibits that were lost here need not have been presented at the trial at all.

However, once the evidence is utilized, a different situation is presented. Several considerations must be evaluated to determine whether the loss has been prejudicial to the defendant, namely: (1) whether the objects in evidence, if retained and made available to the defendant, "would have been of value in his defense" (*Van Halen* v. *Municipal Court* (1969) 3 Cal.App.3d 233, 236 [83 Cal.Rptr. 140]; (2) the stage of the proceeding when the evidence is lost (see *Van Halen* v. *Municipal Court, supra,* p. 237; *People* v. *Shafer* (1950) 101 Cal.App.2d 54, 60 [224 P.2d 778]); (3) whether the loss was intentional or negligent and who was responsible (*In re Imbler* (1963) 60 Cal.2d 554 [35 Cal.Rptr. 293, 387 P.2d 6], cert. den., 379 U.S. 908 [13 L.Ed.2d 181, 85 S.Ct. 196]; *Covington* v. *Municipal Court* (1969) 273 Cal.App.2d 470, 476-477 [78 Cal.Rptr. 563]); and (4) whether it was "reasonably possible" that the jury would have reached

a different conclusion had the evidence been retained for the second day of jury deliberations *(People* v. *Haston, supra,* p. 252).

Defendant has completely failed to demonstrate what value the lost exhibits would have been to the jury. The jurors' affidavits expressed *thoughts* that the exhibits would have helped them in clarifying the location of certain grease spots, bloodstains, frying pan parts, and the entry of the knife. However, this statement of reasoning processes is not competent evidence to impeach a verdict. *(People* v. *Hutchinson, supra.)* And as elaborated upon previously, the subjects in the photographs had been fully explained at the trial.

Secondly, the exhibits were not lost at an early stage of the proceeding and thus did not prevent the defendant from examining them, preparing his case, or cross-examining the witnesses who prepared or discovered the exhibits. (See *Van Halen* v. *Municipal Court, supra,* at p. 237.) The jurors even had the opportunity to examine the exhibits on the first day of deliberations and to inspect Exhibits 1 through 5 at the trial.

Next, the exhibits were not intentionally destroyed by the prosecution, but were negligently discarded by a third party. *(People* v. *Shafer, supra,* p. 60; *Covington* v. *Municipal Court, supra,* pp. 476-477; see *In re Imbler, supra,* p. 567.)

In the *Imbler* case, the court stated: "We have no doubt that negligence of representatives of the state in preparing and presenting a criminal prosecution could in some cases result in a denial of a fair trial. [Citations.] Police investigators, however, are not infallible, and it is the basic purpose of the trial to determine whether they were correct in asserting the defendant's guilt. Unless their negligence has obstructed the defendant in challenging the case against him, it is not a ground for collateral attack." (P. 567.) By an extension, bailiffs, sheriffs, and janitors having custody or access to the evidence, are not infallible. Defendant was able to prepare his case adequately and, as previously emphasized, no prejudice resulted to him.

Finally, the courts determine whether it is reasonably possible that the *outcome would have differed if the evidence had not been lost. (People* v. *Haston, supra,* pp. 252-253; for the "reasonably probable" test, see *People* v. *Kidd* (1961) 56 Cal.2d 759, 769-771 [16 Cal.Rptr. 793, 366 P.2d 49].) Here, the lost evidence was cumulative of the oral testimony. If there was a disagreement among the jurors as to what was contained in the lost exhibits, they could have asked the court to read the testimony of the percipient witnesses.

We conclude that the loss of this evidence, although deplorable and alarming, did not deprive this defendant of a fair trial.

The Attorney General requests the abstract of judgment be corrected since it stated that the weapon used under section 12022 of the Penal Code was a firearm and not a dagger with a blade exceeding five inches as alleged in count I of the information.

The evidence at trial showed that the blade of the knife was 6½ to 7 inches long and penetrated 5¾ inches into the body of the victim. Thus, the knife meets the definition of a deadly weapon as set forth in section 3024, subdivision (f), of the Penal Code. (*People* v. *Ferguson* (1970) 7 Cal.App.3d 13, 18-20 [86 Cal.Rptr. 383].) The court was occasionally inaccurate in referring to section 12020 instead of 12022, but the verdict forms sent to the jury properly recited a "deadly weapon" allegation under section 12022. The defendant did not object to these slips of the tongue.

Although sections 12022 and 3024 of the Penal Code are inapplicable "where use of a deadly weapon is an essential element of the crime . . ." (*People* v. *Floyd* (1969) 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862]), the use of a deadly weapon is not one of the essential factors of the crime of second degree murder. (See *In re Shull* (1944) 23 Cal.2d 745, 750-751 [146 P.2d 417]; *People* v. *Robinson* (1970) 6 Cal.App.3d 448, 456 [86 Cal.Rptr. 56], cert. den., 400 U.S. 907 [27 L.Ed.2d 145, 91 S.Ct. 149].) Accordingly, it is directed that the abstract of judgment be corrected to reflect that the allegation of being armed with a deadly weapon under section 12022 was found true, and deleting any reference to a firearm.

The purported appeal from the denial of defendant's motion for a new trial is dismissed. The judgment, as corrected, is affirmed.

Taylor, P. J., and Kane, J., concurred.