[Crim. No. 11061. Third Dist. June 29, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
ROOSEVELT VIRGIL VINSON, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Mark L. Christiansen, Deputy State Public Defender, Kenneth M. Wells, Public Defender, and Kenneth M. Malovos, Assistant Public Defender, for Defendant and Respondent.

## Opinion

**PARAS, Acting P. J.**—The People appeal from an order granting defendant a new trial (Pen. Code, § 1238) after a jury convicted him of murder, attempted murder, and robbery (Pen. Code, §§ 187, 664, 211), with use of a firearm in their commission. (Pen. Code, §§ 12022, subd. (a); 12022.5.) The basis of the new trial motion was an allegation of judicial misconduct in that during jury deliberations the trial judge (Rothwell B. Mason), spoke briefly with a juror Mary Peruch in chambers out of the presence of defendant, counsel, or court reporter.

Defendant's motion was heard by Judge Raymond B. Roberts. Defendant presented declarations from his counsel and from Peruch. Her statement indicated that during deliberations she was the only one of the twelve to vote for acquittal, and as a consequence was receiving pressure from the others to alter her vote; she sent a note asking to see Judge Mason; he agreed to see her in his chambers; he admonished her not to say which way the jury was voting; she then told him the other jurors thought she was partial to the defendant; he replied "no comment."

The prosecution presented the affidavits of nine of the eleven other jurors. Each denied that any pressure was applied to Peruch. The live testimony of Judge Mason was also presented. He stated he received a note (not produced at the hearing) asking that he see Peruch. He consented to see her in the belief that she had personal problems or concerns, but with full knowledge that any discussion of jury deliberations would be inappropriate. He remembered the juror making a statement to the effect that "There seems to be a difference of opinion . . . ." He abruptly stopped her, saying he could not discuss the deliberations, and forthwith sent her back to deliberations. That same afternoon (Feb. 11, 1981), he contacted both attorneys to inform them of what had occurred. On February 14, 1981, the jury rendered a guilty verdict.

After considering the evidence and listening to oral arguments at the hearing on the new trial motion, Judge Roberts made the following factual finding:

"I'm going to declare, immediately, that in my opinion, there is no impropriety, there is no reflection on Judge Mason's credibility, there is no evidence of any coercion or erroneous instructions, but I am confronted with the problem that I think that this is a woeful case of the appearance of impropriety, and I think it's compounded by the fact that the note from the jury to the Judge has mysteriously disappeared, which may or may not give some inkling as to how the confrontation could have been avoided, if there was any statement on the note as to the nature of the request for the personal interview.

"The bailiff wasn't present during the interview, the defendant was not present, . . . and the reporter was not present, and I think that I could analogize it to a Judge going into the jury room and coming out and no matter what was said from then on, the reflection would be that something improper had happened.

"I take the position that Judges, like Caesar's wives, must avoid the appearance of impropriety, more than the impropriety itself, and based thereon, the motion for a new trial is granted."

 It is a long established rule that any private communication between judge and jury is improper. (*Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641]; *People* v. *Alcalde* (1944) 24 Cal.2d 177, 189 [148 P.2d 627]; *People* v. *Knighten* (1980) 105 Cal.App.3d 128, 132 [164 Cal.Rptr. 96].) "'[A]ll communications should be made in open court. . . . Ordinary procedure would require that the trial judge afford the parties an opportunity to be apprised of any such communication and to have the opportunity to make timely objection to any action by the court or jury which might be deemed irregular.'" (*Paulson* v. *Superior Court, supra*, 58 Cal.2d at p. 7; *People* v. *Weatherford* (1945) 27 Cal.2d 401, 419 [164 P.2d 753]; *People* v. *Lee* (1974) 38 Cal.App.3d 749, 754-755 [113 Cal.Rptr. 641].) Judge Mason's private conversation with the juror was thus technical error.

However, in these circumstances we cannot agree with Judge Roberts that a new trial is in order. In *People* v. *Alcalde, supra*, 24 Cal.2d at page 189, the jury sent a question to the judge regarding the defen-

dant's possible sentence. The judge sent back a curt, private response to the jury. Although the court found error, it also found no prejudice. *People* v. *Woods* (1950) 35 Cal.2d 504, 512 [218 P.2d 981], involved a discussion, in chambers, between the judge and a juror, in which the judge explained the meaning of the term "hung jury." The court found that although this was improper, "nothing took place in the conversation complained of which could possibly have prejudiced defendant . . . ." Similarly here Judge Roberts in effect found no prejudice; and in our view a contrary finding or conclusion is inconceivable. Peruch herself avers that Judge Mason told her nothing regarding the case ("no comment"). Indeed, unlike the cited cases in which the trial judge said or wrote something to jurors concerning the case, Judge Mason, here terminated the conversation the instant he learned that Peruch's problem related to deliberations. Thus he did not himself communicate to the juror at all in the *Paulson* case sense (see quote *supra*).

Trial judges are beset by a multitude of concerns during the course of trial, not the least of which may be personal problems of jurors. To whom else should these be referred? The judge alone has the power to vary procedures and schedules where necessary to accommodate a juror's special need. Indeed it is the judge's duty to devote attention to such matters. ▉ While in the vast majority of instances they can be handled in the orderly fashion related in *Paulson*, there are times when a trial judge will consciously risk technical error (error only because it violates the word of *Paulson*, not its spirit) by conversing privately with a juror. It is not every personal juror's problem that can or should be addressed in open court, or even through a bailiff, as any experienced trial judge will attest. If the matter is in reality personal (as the judge has every right to expect, having frequently admonished the jury not to discuss the case with anyone), it can be attended to with confidentiality to the juror and offense to no one. If not, it can be handled precisely as Judge Mason handled it, by refusing to make any comment, returning the juror to his duties, and informing counsel.

We do not intend hereby to encourage trial judges routinely to confer with sitting jurors in chambers rather than in open court, for we certainly agree with the *Paulson* rule. We simply recognize the inevitability of an occasional exception. When such an exception is made it is most inappropriate and not at all just to fashion a rule of per se reversal. While the appearance of propriety is important in all trials, first, we do not find it lacking in the conduct of Judge Mason here. To whom did it "appear" improper and how? Second, it is not so important that

justice should be thwarted by it (we are not presented here with any juror misconduct issue—that will doubtless be considered on defendant's appeal). We are taught not to "exalt form over substance." (*In re Hedberg* (1965) 232 Cal.App.2d 728, 733 [43 Cal.Rptr. 193]; Civ. Code, § 3528), and will not do so here.

Given the error, the test for reversal vel non is not the appearance of impropriety but prejudice to the defendant. (See *People* v. *Woods, supra*; *People* v. *Alcalde, supra*.) It is not reasonably probable that a result more favorable to the defendant would have obtained had Judge Mason not spoken to juror Peruch. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

█ There is language in some California cases suggesting that improper communications between judge and juror infringe upon a defendant's Sixth Amendment right to counsel. (*People* v. *Dagnino* (1978) 80 Cal.App.3d 981, 997 [146 Cal.Rptr. 129] (judge privately gave jury instructions to the jurors); *People* v. *Knighten, supra*, 105 Cal.App.3d at pp. 132-133 (judge privately spoke with jurors to clarify a request for the rereading of testimony).) Should such constitutional import be assigned to the events here (which we do not do), the appropriate standard of review would be that of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], which requires that the error be found harmless beyond a reasonable doubt to avoid reversal. We so find it.

Our disposition makes it unnecessary to discuss an alternative contention of the People.

The judgment (order) is reversed.

Carr J., concurred.

**REYNOSO, J.**—I concur in the result. *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1 [22 Cal.Rptr. 649, 372 P.2d 641], does not teach a per se rule. The test, it appears to me, is whether the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) I conclude that it was harmless under *Chapman*. I write separately to stress that error was committed; our opinion should not be interpreted to condone

such error. Wise counsel dictates that prejudice (and reversal) not be risked and that error be avoided. While the *Paulson* procedure may be bothersome at times, it is the reasoned decisional law which guides all of us on the bench.

A petition for a rehearing was denied July 29, 1981, and the judgment was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 2, 1981. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.