[Crim. No. 23182. First Dist., Div. Two. Sept. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
PIETRO GARCIA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for part V.

COUNSEL

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, and Joseph T. Arriola, under appointments by the Court of Appeal, Harriet Wiss Hirsch and George L. Schraer, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.**—By jury verdict defendant Pietro Garcia was convicted of two counts of mayhem with use of a deadly weapon (Pen. Code, §§ 203; 12022, subd. (b)),[1] two counts of attempted murder with use of a deadly weapon resulting in great bodily injury (§§ 187, 664, 12022.7), and three counts of assault with a deadly weapon (§ 245, subd. (a)). Defendant was also found to have suffered a prior felony conviction. These convictions arise out of three separate stabbing incidents over a five-day period in December of 1980. In defendant's appeal from the judgment entered on the verdict, the questions presented are 1) whether a private communication between the judge and two members of the jury impinged on defendant's constitutional rights; 2) whether the trial court's refusal to question the remainder of the jury constituted error; 3) whether the trial court's comments to two jury members denied defendant a fair trial; and 4) whether remarks made by the prosecution during closing argument constituted re-

---

[1] All section references are to the Penal Code unless otherwise specified.

versible error. In connection with the third issue, we are also called upon to decide the novel question of whether the jury may properly consider a nontestifying defendant's courtroom behavior as evidence of guilt.

Since defendant does not challenge the sufficiency of the evidence, we confine our discussion only to the events upon which he now bases his appeal.

During trial, but out of the presence of the jury, the court recorded an event that had occurred the previous day:

"Something occurred after Court was dismissed, recessed yesterday, and after the Reporter had left. . . . [T]wo jurors asked to see me in private, and I took them into my chambers to find out what the problem was.

"Two lady jurors, who told me that they wished that I would instruct the Defendant and the lady that was sitting in the front row behind the Defendant to stop jeering or making facial motions of jest or whatever, something along that line of jeering, when the last witness, who is presently testifying, was on the stand.

"I had not noticed this. . . . [T]he jurors told me that the Defendant would turn around and kind of smirk or jeer. . . . Then I advised both the women jurors that they were to disregard what anyone in the audience did, that that in no way constituted legal evidence, and that they must ultimately predicate their decision only on the evidence that was produced here in the Courtroom, legal evidence produced in the Courtroom.

"I then came out and let the two lady jurors leave, located both attorneys and told them, basically, the same thing, I believe, and admonished the Defendant in the strongest terms that I could that he was to face forward . . . ."

Defendant's counsel immediately requested that the court "question the other jurors as to what they perceived." The court denied this request but offered to arrange a meeting between defendant's counsel and the two jurors who had brought defendant's conduct to the court's attention. Defendant's counsel declined this offer, stating "I'm more concerned at this point about what others on the Jury may have perceived or observed."[2] Defendant's counsel then renewed his request that the court question the other jurors

---

[2]Several days later after trial had recommenced, defendant's counsel requested that the two jurors be returned and questioned concerning "what they witnessed or what they think they witnessed." This request was denied.

about "what they observed." After the court again denied this request, defendant's counsel moved for a mistrial. That motion was denied.

I

Defendant first contends that the trial court committed prejudicial error by holding an unreported oral communication with members of the jury out of the presence of defendant and his counsel.[3]

The legal principles relating to a trial court's private communication with jurors are well settled. ■ To start with, ". . . it has long been the rule that the trial court should not entertain communications from the jury except in open court, with prior notification to counsel." (*People* v. *Hogan* (1982) 31 Cal.3d 815, 848 [183 Cal.Rptr. 817, 647 P.2d 93]; *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 7 [22 Cal.Rptr. 649, 372 P.2d 641]; *People* v. *Weatherford* (1945) 27 Cal.2d 401, 419 [164 P.2d 753].) This rule is based on the precept that a defendant should be afforded an adequate opportunity to evaluate the propriety of a proposed judicial response in order to pose an objection or suggest a different reply more favorable to the defendant's case. (*People* v. *Knighten* (1980) 105 Cal.App.3d 128, 132 [164 Cal.Rptr. 96]; *People* v. *Lee* (1974) 38 Cal.App.3d 749, 754-755 [113 Cal.Rptr. 641].) ■ In essence, the rule barring confidential communications between the court and jury protects a defendant's fundamental constitutional right to the assistance of counsel at all critical stages of the proceeding. (*People* v. *Hogan, supra,* 31 Cal.3d at p. 849; *People* v. *Dagnino* (1978) 80 Cal.App.3d 981, 997 [146 Cal.Rptr. 129].)

■ It is manifest that by interviewing two jurors in the absence of defendant and his attorney the trial court committed error. The critical question then is whether that error requires reversal of defendant's conviction.

■ Cases uniformly recognize that the harmless error rule applies to the situation where there has been an unauthorized communication between judge and jury. (*People* v. *Woods* (1950) 35 Cal.2d 504, 512 [218 P.2d 981]; *People* v. *Alcalde* (1944) 24 Cal.2d 177, 188-189 [148 P.2d 627]; *People* v. *Dagnino, supra,* 80 Cal.App.3d at p. 988.)

■ In our view, the instant error was harmless. Nothing that took place in the communication complained of between the judge and two jurors could have possibly prejudiced defendant. Indeed, the court remarked that it felt

---

[3]Specifically, defendant charges that the court's communication with the jurors deprived him of his right to assistance of counsel at a critical stage of the proceeding, his right to be present at all stages of his trial, and his right to be tried by an impartial jury.

the interchange had "minimized the impact [of defendant's courtroom conduct] on those two jurors." Unlike the cases relied on by defendant in which trial judges privately instructed the jury on an area of law or informally advised them on a technical point, the judge here spoke to the jurors on an entirely collateral matter. When the two jurors expressed their personal concern about the defendant's courtroom behavior, the judge advised that they were to "disregard what anyone in the audience did . . . and that they must ultimately predicate their decision only on the evidence that was produced here in the Courtroom . . . ." In this instance, the admonition of the trial court could have properly been given over the objection of defendant if the proper procedure had been followed. Unquestionably, any error occasioned by this private communication between judge and jury was harmless beyond a reasonable doubt. (*People* v. *Hogan, supra,* 31 Cal.3d at p. 850; *People* v. *Vinson* (1981) 121 Cal.App.3d 80, 85 [175 Cal.Rptr. 123]; *People* v. *Knighten, supra,* 105 Cal.App.3d at p. 133.)

■ Furthermore, on this record, we find a sufficiently compelling showing that defendant waived any claim of error. A number of courts have questioned whether a defendant should be permitted to sit back, await a jury verdict, and then assert error based on the court's improper communication with the jury. (*People* v. *Chagolla* (1983) 144 Cal.App.3d 422, 432-433 [193 Cal.Rptr. 711]; *People* v. *Kageler* (1973) 32 Cal.App.3d 738, 746 [108 Cal.Rptr. 235]; *People* v. *House* (1970) 12 Cal.App.3d 756, 765-766 [90 Cal.Rptr. 831]; but see *People* v. *Knighten, supra,* 105 Cal.App.3d at p. 132.) Although in the instant case defendant's counsel signified that he was objecting to the court's refusal to question other members of the jury about what they observed, counsel *never objected* to the trial court's privately communicating with the two jurors with whom the judge spoke. When the court offered to make the jurors available so that defendant's counsel could question them about their communication with the court, counsel refused the offer. Under these circumstances, defendant may not now be heard to complain that this court cannot evaluate the prejudicial effect of the error, because "[t]here was no record made of the conversations between the judge and jurors at the time they occurred . . . ."[4] Any error was effectively waived.

---

[4]As noted earlier, several days after defendant's counsel declined the court's offer to make the two jurors available for questioning, defendant's counsel apparently reconsidered and requested the opportunity to question the jurors. This request was denied. However, in making his request, defendant's counsel set out his intention to question the two jurors about "what they witnessed or what they think they witnessed." Defendant's counsel never expressed any concern about the substance or propriety of the court's communication with these jurors nor did he express a desire to question these jurors to establish a record of their recollections of their communication with the judge. Accordingly, defendant's counsel's later attempt to interview these jurors did not negate the earlier waiver.

## II

■ Defendant next assigns error to the trial court's refusal to voir dire the remaining jurors to discern whether they too observed the defendant conducting himself in a questionable manner.[5] After the trial court admonished defendant, defendant's counsel made several requests that the entire panel be questioned "as to what they perceived." The court denied these requests after it concluded that an interrogation of the jurors would only serve to "put added significance" to the event in their minds.

The trial judge is ordinarily in the best position to assess a situation of the sort here in issue and to make an informed judgment as to the wisest course. In light of the circumstances, the other instructions received by the jury (see fn. 10, *post*), and considering the indulgences normally accorded the judge who presides at trial, the refusal to voir dire the other jurors and thereby draw considerable additional attention to defendant's questionable conduct simply cannot be characterized an abuse of discretion.

## III

■ Defendant next takes issue with the instruction given by the trial judge that the two jurors she met with "were to disregard what anyone in the audience did, that that in no way constituted legal evidence, and that they must ultimately predicate their decision only on the evidence that was produced here in the Courtroom . . . ." Specifically, defendant alleges that this instruction impermissibly allowed the jurors to consider defendant's courtroom conduct in their determination of his guilt or innocence since 1) defendant would not normally be considered part of the "audience" and 2) the court did not define the term "evidence."

The record clearly establishes that the trial court believed that defendant's courtroom demeanor could properly be considered by the jury in their evaluation of his guilt or innocence.[6] The People share this belief, considering that "the demeanor of the defendant as he hears the accusations can properly

---

[5] Defendant contends that the denial of his request to voir dire the jury deprived him of the right to counsel at a critical stage of the proceedings. Defendant's right to counsel is not implicated here. The constitutional right to be represented by counsel only guarantees that defendant will have the assistance of counsel at all critical stages of the proceeding—it does not guarantee that every motion proffered by defendant's counsel will be granted.

[6] During an exchange with defense counsel out of the hearing of the jury, the court remarked, "But part of that evidence is the conduct of your own client in the Courtroom. If he acts totally callous, I'm human, that's part of what they evaluate." The court remarked at a later point, "But they can evaluate [defendant's courtroom conduct] and that was action that went down right in front of them and you may comment on it as far as I'm concerned in your argument. As far as I know, that's admissible and permissible . . . ."

be considered by the jury as it tends to show a consciousness of guilt." Although we have found no California cases that address this precise issue, we do not entirely share this view.

At the outset, we do not blind ourselves to the reality that regardless of the rules that may be laid down by the courts in this area, jurors will invariably study a nontestifying defendant's appearance and demeanor in hopes of discovering clues as to his guilt or innocence. Indeed, recognition of this reality has prompted our Supreme Court to vigorously disapprove of defendants appearing in court in identifiable prison clothing (*People* v. *Taylor* (1982) 31 Cal.3d 488 [183 Cal.Rptr. 64, 645 P.2d 115]) or in restraints (*People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]). Nevertheless, appellate acknowledgment that jurors often will be influenced, both positively and negatively, by their perceptions and impressions of a nontestifying defendant's courtroom demeanor does not constitute overt judicial approval of this phenomenon as a legitimate aspect of the fact-finding process.

◼ Ordinarily, a defendant's nontestimonial conduct in the courtroom does not fall within the definition of "relevant evidence" as that which "tends logically, naturally, [or] by reasonable inference to prove or disprove a material issue" at trial.[7] (*People* v. *Jones* (1954) 42 Cal.2d 219, 222 [266 P.2d 38]; *People* v. *Stein* (1979) 94 Cal.App.3d 235, 240 [156 Cal.Rptr. 299].) Neither can it be properly considered by the jury as evidence of defendant's demeanor since demeanor evidence is only relevant as it bears on the credibility of a witness. (Evid. Code, § 780.) If anything, focusing the jurors' attention on a defendant's courtroom conduct distracts their attention from and may diminish the weight they assign to the permissible factors identified by the instructions as legitimately aiding in the determination whether the defendant committed the alleged offense. Authorizing the consideration of such demeanor in the determination of guilt or innocence also runs the grave danger of inviting the jury to use the character of the accused to prove guilt—something that is wholly improper unless the defendant first presents evidence of his good character. (Evid. Code, § 1102; *People* v. *Terry* (1970) 2 Cal.3d 362, 400 [85 Cal.Rptr. 409, 466 P.2d 961].)

---

[7]It should not be inferred from this analysis that we somehow disapprove of the routine practice of a jury viewing the defendant's physical appearance to see if it comports with a physical description given by a witness or to determine if the physical appearance of a defendant supports a factual finding that must be made by the trier of fact. (See, e.g., *People* v. *Montalvo* (1971) 4 Cal.3d 328, 335 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518] [view of defendant by the trier of fact in an appropriate case may be sufficient to support a finding that defendant is an adult].) Our holding is limited to those instances where defendant's nontestimonial behavior at counsel table is not objectively relevant to any disputed issue at trial and is merely offered to show defendant's character or a trait of his character.

Recognizing and applying these basic principles leads us to conclude that the nontestimonial behavior of a defendant while in the courtroom cannot be judicially endorsed as evidence of his guilt. While we realize that this conclusion will not likely affect the way juries actually perceive and evaluate defendants, we cannot give legal force to this realization. As one court has noted, "What the jury may infer, given no help from the court, is one thing. What it may infer when the court in effect tells it that the courtroom behavior of the accused constitutes evidence against him is something altogether different."[8] (*United States* v. *Wright* (D.C. Cir. 1973) 489 F.2d 1181, 1186; see also *United States* v. *Carroll* (4th Cir. 1982) 678 F.2d 1208, 1209-1210.)

We cannot know whether, despite the admonition of the trial judge, the conduct and attitude of defendant herein prejudiced him in the minds of the two jury members who witnessed his courtroom behavior. It is sufficient, however, that these jurors were directed to lay aside any impressions or opinions resulting from that behavior and render a verdict based instead on the evidence formally presented in court. We conclude that irrespective of the belief expressed by the trial judge outside the presence of the jury that defendant's courtroom conduct was probative of his guilt or innocence, her contrary advice to these two jurors was sound. Defendant's specific contention that a jury would not normally consider a nontestifying defendant to be part of the audience is based on too narrow an interpretation of "audience." A more reasoned interpretation of what the court meant to and, in the circumstances in which it acted, did convey in its directive that the jurors were to "disregard what anyone in the audience did" was that the jurors were only to credit the testimony and demeanor of witnesses while testifying under oath and ignore the conduct of all others.[9] Likewise, the court's failure at the time this admonition was given to more fully define the term "evidence" was not critical, as the meaning of that term was adequately defined in the court's final instructions.[10] Accordingly, we cannot say that

[8]We recognize that in the view of some distinguished judges the theory that the jury ordinarily understands and adheres to instructions—a theory implicit in the quoted statement and a fundament of our jurisprudence—is nonetheless a legal fiction. (See, e.g., Frank, Courts on Trial: Myth and Reality in American Justice (1950) ch. VIII, pp. 108-125.)

[9]The court's admonition to these jurors was reiterated in the instruction given on matters to be considered by the trier of fact in determining the credibility of a witness. In this category are "the demeanor and manner of the witness while testifying . . . ." Since the defendant in this case did not testify, his credibility was not in issue and his demeanor irrelevant.

[10]The court instructed the jury as follows: "Evidence consists of testimony of witnesses, writings, material objects or anything presented to the senses and offered to prove the existence or non-existence of a fact. Evidence is either direct or circumstantial. [¶] Direct evidence is evidence that directly proves a fact without the necessity of an inference and why [*sic*] by itself, if found to be true, establishes that fact. [¶] Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn."

the trial court acted improperly or abused its discretion in instructing these jurors on how they should evaluate defendant's courtroom behavior.[11]

## IV

■ Defendant finally claims that the prosecution's argument to the jury was in violation of his constitutional right to due process and privilege against self-incrimination. During closing argument, the prosecutor reviewed the brutal nature of the crimes charged and then implored: "Why? I can't explain the why of it no more than I can explain why two people could sit in a courtroom and hear [the victim] relate that horrendous experience, how close she came to death and sit here listening to that testimony and snicker and jeer and laugh about it." A defense objection to this line of argument was overruled, without comment, by the trial court.

It is clear that the prosecutor's reference to defendant's courtroom behavior was improper. In essence, the prosecutor invited the jury to speculate that defendant's courtroom conduct shows him to be the type of person willing to participate in unlawful activity; and therefore he is likely to have committed the crimes in question. As discussed earlier, the courtroom behavior of defendant was a matter which the jury could not properly be authorized to consider as evidence of guilt. ■ In light of the error, we must review the record to determine whether it is reasonably probable that a result more favorable to the defendant would have occurred had the district attorney not made the improper comment.[12]

---

[11]We feel constrained to highlight a limitation to our holding. We set no rule regarding a trial court's failure to instruct the jury *sua sponte* to ignore the defendant's courtroom behavior in its deliberations nor do we purport to require trial courts to give such an instruction upon request of counsel. A strong argument can be made that such an admonition does little to dispel prejudice and instead only serves to emphasize an unruly defendant's conduct. Our inquiry is limited to whether the instruction given by the trial court herein was proper.

[12]Defendant contends that the error is of federal constitutional dimension and cannot be deemed "harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) It has been noted that "[c]ourts of this state have generally assumed that prosecutorial misconduct is error of less than constitutional magnitude." (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214, fn. 4 [152 Cal.Rptr. 141, 589 P.2d 396].) Furthermore, in cases where jurors are improperly exposed to certain factual matters, the error is usually tested under the standard set out in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (See, e.g., *People* v. *Tassell* (1984) 36 Cal.3d 77, 89 [201 Cal.Rptr. 567, 679 P.2d 1]; *People* v. *Cardenas* (1982) 31 Cal.3d 897, 907 [184 Cal.Rptr. 165, 647 P.2d 569]; *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 723 [135 Cal.Rptr. 392, 557 P.2d 976], disapproved on another point in *People* v. *Green* (1980) 27 Cal.3d 1 [135 Cal.Rptr. 392, 557 P.2d 976].) *People* v. *Gilliam* (1974) 41 Cal.App.3d 181 [116 Cal.Rptr. 317] is closely in point. During closing argument in that case, while recounting the victim's trial testimony, the prosecutor noted that defendant was smiling by stating: " 'The defendant thinks its funny. Nobody was pointing a gun at him.' " (*Id.,* at p. 194.) The appellate court concluded that this remark did not require reversal of defendant's conviction after testing the prosecutor's remarks under the standard set out in *Watson.*

The evidence against defendant may be summarized as follows: The first stabbing incident took place at about 11:30 p.m. on December 8, 1980, when defendant and four others confronted the victim, who was from a rival neighborhood. The victim testified that defendant reached into the victim's car and cut him on the ear. The victim noticed a scar under his assailant's left eye. A week after the incident, the victim selected defendant's photograph from a photographic lineup. He also made an in-court identification of defendant as the man who stabbed him.

The second stabbing took place on December 12, 1980, at about 11:30 p.m. One of the victims in this incident testified that he asked defendant to leave the premises of B.J.'s Lounge. While the defendant and others were standing outside the bar, defendant brandished a stiletto-type knife with a five- or six-inch blade. After a heated verbal exchange, defendant cut the first victim on the left side of his face from his left ear to the jaw. Four days after the assault, this victim selected defendant's photograph from a photographic lineup.

The second victim during this incident was an employee of B.J.'s Lounge who was assisting the first victim in attempting to persuade defendant to leave. Defendant approached him with a knife as he was backed up against a garbage dumpster. The victim kicked defendant in the groin area, and defendant cut him under the right eye. This victim also selected defendant's photograph in a photographic lineup a few days after the assault.[13]

A witness to this altercation testified that he recognized defendant "[b]oth from school and from my neighborhood." He witnessed defendant cut the first victim in the face.[14] This witness gave a physical description of defendant to the police, including a description of a "scar or scratch" under defendant's left eye. He also selected defendant's photograph from a photographic lineup six days after the incident.

The third stabbing incident took place a few hours after the events last described. In this instance the victims, a male and female, had stopped their car in a parking lot to listen to music. Suddenly, the driver's door was

---

In the instant case, as in *Gilliam,* the improper comment was brief and did not specifically state that the jury could consider defendant's courtroom conduct as evidence that he committed the crime. For the foregoing reasons, we conclude that the *Watson* test of probable prejudice is here applicable.

[13]During cross-examination defense counsel showed a photograph of defendant's brother to both of these victims and asked if they recognized it. This did not fool the first victim, who testified it was not defendant. However, the second victim momentarily thought it was a photograph of defendant. Later, the second victim recognized his mistake and said that his original identification was in error.

[14]He did not observe defendant cut the second victim.

opened and a man identified by the female as defendant leaned into the car.[15] A struggle ensued between defendant and the male passenger. Another assailant joined in to help defendant. At some point, the male victim became aware that he was being stabbed in the back and chest. Both assailants turned their attention toward the female when she began screaming.[16] Defendant grabbed her and cut her arm. At one point, the female victim was in a "balled-up" position on the ground with both assailants on top of her. In attempting to protect her face with her hands, she suffered a cut to her finger and her face was nicked. She also suffered a stab wound under her arm. The male victim heard her "screaming in terror," found a bottle, and broke it near the assailants' feet. They backed away and ran off.

Several days after the incident, the female victim selected defendant's photograph from a photographic lineup. Defendant's left thumb print was found on the driver's door of the victim's car. Defendant was arrested the morning after this incident. He was wearing a trenchcoat splattered with bloodstains. An analysis of the bloodstains showed that the blood could not have belonged to defendant but was consistent with the blood type of both the male and female victims of the last assault. When defendant was placed in his cell, he was overheard telling his cellmate, "They had gotten me for that shit last night."

On this record, it is not necessary to delve into an extended evidentiary analysis of whether it is reasonably probable, absent the prosecutor's improper comment on defendant's courtroom conduct, that there would have been a result more favorable to defendant. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.) The evidence presented against defendant at trial was overwhelming. While the prosecutor's closing argument should have avoided reference to defendant's courtroom conduct, it does not justify disturbing the guilty verdict.

For the foregoing reasons, the judgment is affirmed.

### V*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Accordingly, though we affirm the judgment of conviction, the cause is

---

[15]The male passenger was unable to make an identification.

[16]The female victim, who holds a bachelor's degree in Spanish, testified that she heard one of the men say "matala" which means "kill her" in Spanish. She also heard a name that sounded like "Pedro."

*See footnote, *ante,* page 82.

remanded to the superior court for resentencing in accordance with the views expressed herein.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied October 12, 1984, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1984.