Filed 1/24/14  P. v. McClelland CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B242634 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA377622) |
| v. | |
| ANDRE MCCLELLAND, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Schuit and Drew E. Edwards, Judges.  Affirmed.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Andre McClelland appeals from his conviction, following a jury trial, of second degree robbery. He contends (1) there was insufficient evidence to support the gang enhancement, (2) the trial court erred in allowing a gang expert to give opinions unsupported by evidence presented at trial, and (3) he received ineffective assistance of counsel. Finding no error, we affirm.

## PROCEDURAL HISTORY

On July 5, 2011, a jury found appellant guilty of second degree robbery (Pen. Code, § 211).[1] It also found true the allegation that a principal in the offense was armed with a firearm (§ 12022, subd. (a)(1)), and that the crime was committed for the benefit of a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)). In a bifurcated proceeding, the trial judge found true the allegation that appellant had suffered a prior conviction within the meaning of sections 667, subdivision (a)(1), 667.5, subdivision (b), and the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

After trial counsel was discharged and a public defender appointed, new counsel filed a motion for a new trial on the grounds of ineffective assistance of prior counsel. The trial court denied the motion. The court then sentenced appellant to a total of 21 years in prison, consisting of the midterm of three years for the robbery conviction, doubled to six years as a second strike, plus 10 years consecutive for the gang enhancement and five years for the section 667, subdivision (a)(1) enhancement. Appellant timely appealed.

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

2

# FACTUAL BACKGROUND

On October 27, 2010, at around 2:00 p.m., Kristopher Sallico was robbed at his drycleaning business by two men. He identified the robbers as appellant and codefendant LeAndre Hebrard, whom he knew as "4-Leaf" and "Touche," respectively.[2] The men were friends of Sallico's son, and he had spoken with them "numerous" times, mainly to advise them to become productive citizens. When appellant and Hebrard entered his drycleaning business, Sallico approached them. Appellant said to Sallico, "Pops, give me the money." Sallico replied, "Are you joking?" Hebrard, who was standing about three feet behind appellant, lifted his shirt and showed Sallico the handle of a handgun. Sallico became frightened and walked to the cash register. He took out the money and gave it to appellant. Appellant and Hebrard walked out, got into a car, and drove away.

After the men left, Sallico tried to contact his son but could not reach him. About an hour later, he called the police. When the police arrived, Sallico told an officer that he had been robbed by two Black men who were Rolling 40's gang members. He identified the first man as "4-Leaf" and the second man as "Touche." Later that day, Sallico positively identified appellant and Hebrard as the robbers in a six-pack photographic lineup. He also identified appellant and Hebrard as the robbers at the preliminary hearing and at trial.

At trial, Sallico testified he believed that appellant and Hebrard were affiliated with a gang. The area surrounding his store was a gang area, and gang members had repeatedly "tagg[ed]" his door and walls. Sallico testified that two months after the robbery, he sold the business and moved out of Los Angeles

---

[2] The jury also convicted Hebrard of second degree robbery. This court previously affirmed that conviction. (*People v. Hebrard* (April 24, 2013, B239269) [nonpub. opn.].)

3

because he "wanted to get [his] family and [his] son away from this environment." He also testified his son was a friend of the robbers, he was "unhappy with my son being affiliated with gangs," and he wanted to get his son away from "the gang and the lifestyle."

Los Angeles Police Department Officer Guillermo Espinoza testified as the prosecution's gang expert. Officer Espinoza had worked in the gang enforcement unit for approximately four and a half years. His duties were to "monitor" and "suppress" "the criminal activities of the Rolling 40's Crips criminal gang." As part of his work, he had daily contact with members of the gang. Officer Espinoza also had investigated gang-related crimes, including incidents where Rolling 40's gang members were suspects and victims.

Officer Espinoza testified that the Rolling 40's Neighborhood Crips is a criminal street gang with about 850 members. Gang members have particular symbols, clothing, and tattoos they use to identify themselves. The primary activities of the gang include murder, shootings, robberies, assault, and drug sales. According to Officer Espinoza, gang members need to put in "work" -- committing crimes for the gang -- to "keep their name or status elevated." Officer Espinoza stated that Sallico's business was in Rolling 40's territory, and Sallico was the father of a Rolling 40's gang member. From previous contacts with appellant, Officer Espinoza knew him as a self-admitted Rolling 40's gang member who had gang tattoos and was known by his gang moniker "4-Leaf." Similarly, Officer Espinoza knew Hebrard as an active Rolling 40's gang member. Officer Espinoza stated that he knew "[Hebrard] was living in his mother's house which is outside of [the Rolling 40's] gang territory and actually in . . . rival gang territory." He explained that "because [Hebrard] has family members that are part of that rival gang, they allow him to stay there without any repercussion."

4

Given a hypothetical fact pattern based on the facts of this case, Officer Espinoza opined that the robbery was committed for the benefit of a criminal street gang, the Rolling 40's. He explained that gang members commit robberies to generate income and to instill fear in the community. The fear deters victims from reporting the crimes to the police. It also helps the gang recruit new members.

On cross-examination, appellant's counsel elicited testimony from Officer Espinoza that it was "unusual" for a member of a gang to go out and rob the business of the father of a fellow gang member. Officer Espinoza stated that his last contact with Hebrard was about a year to 18 months ago. He also was aware that Hebrard had testified as a prosecution witness against another Rolling 40's gang member in a murder case in 2009, which is not acceptable within gang culture.

On redirect examination, over defense objections, Officer Espinoza testified that gang members looked down on members who attempt to leave the gang. These members could be disciplined, beaten up, or killed. When a gang member leaves the gang, his family also may be targeted. Officer Espinoza also testified that discouraging people from joining a gang is seen as "disrespecting" the gang.

The prosecutor then asked the officer: "Have any of the questions and answers that people have given today, did they change your opinion about whether the hypothetical of two active members of the Rolling 40's going into a dry cleaner located in . . . Rolling 40's territory, committing a robbery with a gun, has it changed your opinion whether that was done with the specific intent to promote gang membership or to benefit the criminal street gang known as the Rolling 40's?" Officer Espinoza answered, "No, it has not." Officer Espinoza reiterated that "my opinion is that they have committed this robbery for the benefit of their gang."

5

Appellant did not testify. Britney Jones, who had been dating appellant at the time of the robbery, testified that she and appellant were together the afternoon of the robbery. Later that night, they went to a movie together in Culver City. According to Jones, they were never apart for more than 15 minutes, and were never in the area near the victim's store.

## DISCUSSION

Appellant contends (1) there was insufficient evidence to support the gang enhancement allegation, (2) the trial court abused its discretion in permitting the prosecution's gang expert to opine on hypotheticals not supported by the evidence, and (3) he received constitutionally ineffective assistance of counsel when his trial counsel failed to seek an admonishment or move for a mistrial after counsel's evidentiary objection had been sustained.

### A.     *Sufficiency of the Evidence*

Appellant contends the evidence was insufficient to establish that appellant committed the robbery to benefit or in association with the Rolling 40's gang, or with the specific intent to assist gang members. "In determining whether the evidence is sufficient to support a conviction or an enhancement, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]

6

This standard applies to a claim of insufficiency of the evidence to support a gang enhancement. [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.) Expert testimony may be used to prove the elements of a gang enhancement allegation. (See, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 621; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332-1333.)

Here, the jury found true the allegation that appellant committed the robbery for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C). "The section 186.22(b)(1) enhancement requires the jury to find that the crime was committed for the benefit of a criminal street gang and with the specific intent to promote the criminal street gang." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 849.) We conclude that substantial evidence supports the jury's findings that the crime was committed for the benefit of the Rolling 40's gang, and that appellant had the specific intent to promote the gang when he robbed Sallico. The crime was committed by acknowledged Rolling 40's gang members in territory claimed by the gang. The crime victim told the police he had been robbed by Rolling 40's gang members. Officer Espinoza opined that the robbery increased the community's fear of the Rolling 40's gang, and that the gang would benefit from community members' fear and reluctance to report crimes committed by gang members. As our Supreme Court has observed, "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar* (2010) 51 Cal.4th 47, 63; accord *People v. Gardeley* (1996) 14 Cal.4th 605, 619 [from expert testimony that assault was "'classic'" gang activity that frightened residents and secured gang's drug-dealing stronghold in the area, jury could reasonably conclude charged offense was

7

committed for benefit of gang and with specific intent of promoting its criminal activities under § 186.22, subd. (b)(1)]; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 351, 354 [reasonable jury could infer from expert testimony that violent crimes increased respect for gang and intimidated neighborhood residents, and from other evidence in record that murder was committed with specific intent to promote gang's criminal activities]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930- 931 [jury could reasonably infer crime was gang-related from expert testimony coupled with other evidence].)

Appellant contends that Officer Espinoza's opinion that the crime was gang-related was not based upon a proposed hypothetical closely matching the evidence presented in the case. According to appellant, the hypothetical presented to Officer Espinoza failed to include the facts that the robbery was committed against the family business of a gang member, and that Hebrard was a "snitch" at the time of the crime. Appellant's argument fails. These facts were elicited during cross-examination, but on re-direct examination Officer Espinoza reaffirmed his opinion that the crime was gang-related. In short, there was sufficient evidence to support the gang enhancement.

B.    *Gang Expert Testimony*

Appellant next contends the trial court abused its discretion in allowing Officer Espinoza to opine on hypotheticals or about facts not supported by evidence presented at trial. We disagree.

In rendering his or her opinions, a gang expert may rely upon personal conversations with gang members, personal investigation of crimes committed by gang members, and information obtained from the expert's own colleagues and other law enforcement agencies. (*People v. Gardeley, supra,* 14 Cal.4th at p. 620; *People v. Hill* (2011) 191 Cal.App.4th 1104, 1124-1125 [same]; *People v. Duran*

(2002) 97 Cal.App.4th 1448, 1463-1464 [same].)  Here, it is undisputed that based upon his work experience and his personal contacts with the defendants, Officer Espinoza was qualified to testify about the Rolling 40's gang and its gang members.

Appellant first contends that no evidence supported Officer Espinoza's opinion that Hebrard was an active gang member at the time the robbery was committed.  (See *People v. Valdez* (1997) 58 Cal.App.4th 494, 506 [defendant's membership in a gang is a proper subject of expert testimony].)  Officer Espinoza's testimony was supported by his personal contacts with Hebrard, the last of which occurred within months of the crime.[3]  In addition, there was undisputed evidence that Hebrard was armed with a handgun and in the company of an active Rolling 40's gang member in the gang's territory.  A reasonable jury could infer from this evidence that Hebrard was an active gang member.  As for the fact that Hebrard had moved away and was living in a rival gang's territory, the jury was presented with a reasonable explanation -- Hebrard was living with his mother, and he had no fear about repercussions because he had family members in that rival gang.  As for the fact that Hebrard had testified against a Rolling 40's gang member, no evidence was presented that Hebrard was known as a "snitch."  Rather, the fact that Hebrard was present with a Rolling 40's gang member in the gang's territory suggested he was not a known snitch, or that he had been forgiven by the gang.  In short, there was no abuse of discretion in allowing Officer Espinoza to opine that Hebrard was an active Rolling 40's gang member.

---

[3]     Officer Espinoza stated that his last contact with Hebrard -- before Hebrard moved away from Rolling 40's gang territory -- was approximately a year to 18 months prior to trial.  Trial started in late June 2011, and the crime occurred in late October 2010.  Thus, the officer's last contact with Hebrard occurred as late as June 2010, just four months before the robbery.

Appellant next contends that Officer Espinoza's testimony that the Rolling 40's gang would benefit when gang members' crimes went unreported was speculative, as no evidence other than Officer Espinoza's statements was presented that crime victims do not report gang crimes. Officer Espinoza's statements, however, were based upon his years of working in the gang enforcement unit, monitoring and investigating the Rolling 40's gang and its members. Moreover, the officer's testimony that a criminal street gang would benefit when victims of the gang's crimes were too intimidated to report them is reasonable, logical, and self-evident.

Appellant also challenges Officer Espinoza's testimony about how the crime benefitted the gang, arguing that no evidence was presented that robbing a gang member's family business was done to benefit the gang. We disagree. Sallico had testified that he wanted his son to leave the gang, and had encouraged appellant to become a productive citizen. After the robbery, he sold his business and moved his family out of Los Angeles to get away from the gang. Officer Espinoza testified that encouraging people to leave a gang would be seen as "disrespecting" the gang. Thus, the evidence tended to show that the robbery was intended to intimidate Sallico and to discourage him from advising gang members to leave the gang.

Appellant further contends that the trial court improperly allowed Officer Espinoza to testify on redirect examination about the possible repercussions that a member attempting to leave a gang could suffer, as there was no evidence that anyone was attempting to leave the Rolling 40's gang. That testimony, however, was relevant to explain or rebut adverse testimony and inferences developed during cross-examination. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 746 [redirect examination's "'principal purposes are to explain or rebut adverse testimony or

10

inferences developed on cross-examination . . . .'"].) On cross-examination, Hebrard's attorney had elicited testimony suggesting that as Hebrard was no longer living in the Rolling 40's gang's territory at the time of the crime, he was no longer an active member of the gang. Evidence tending to show the disincentives for leaving a gang was relevant to rebut this inference. In short, the trial court did not abuse its discretion in allowing the gang expert's testimony on redirect examination.

Finally, appellant contends that on redirect examination, Officer Espinoza's opinion that "they have committed this robbery for the benefit of their gang" was about the defendants -- as opposed to hypothetical gang members. We disagree with this interpretation of the officer's testimony. In context, the officer was referring to the hypothetical Rolling 40's gang members.

C.     *Ineffective Assistance of Counsel*

During redirect examination, the prosecutor asked Sallico why he decided to call the police. Sallico responded:

"Because I thought -- I felt as if 4-Leaf and Touche, I felt like I counseled them and talked to them a lot of times. Touche one time with a job that he had, a job offer, and I sat him down in the back and said, 'Touche, man, you should take the job. It's a good job. It will change your life. You're gonna start feeling so much better about yourself.' He didn't take the job. And 4-Leaf, when he first got out of jail --"

Appellant's counsel immediately objected to the testimony as irrelevant and inadmissible under Evidence Code section 352. The trial court sustained the objection, but did not explicitly order Sallico's testimony stricken. Appellant now contends that Sallico's "jail" comment was prejudicial per se. In addition, he

11

contends his trial counsel rendered ineffective assistance by failing to seek an admonishment or move for a mistrial. We disagree.

"A witness's volunteered statement can, under some circumstances, provide the basis for a finding of incurable prejudice." (*People v. Ledesma* (2006) 39 Cal.4th 641, 683.) However, even knowledge that a defendant previously has been convicted and is being retried is not necessarily incurably prejudicial. (*Ibid*.) Rather, "[w]hether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion" in determining whether a new trial is required. (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) *People v. Bolden* (2002) 29 Cal.4th 515 is instructive. There, the prosecutor asked a police officer about the defendant's address. The officer answered: "'It was at the Department of Corrections parole office located at--,'" before he was interrupted by the prosecutor. (*Id*. at p. 554.) The trial court did not specifically order the testimony stricken. Later that day, the defendant moved for a mistrial, which was denied. In affirming the denial, the Supreme Court held that "[t]he incident was not significant in the context of the entire guilt trial, and the trial court did not abuse its discretion in ruling that defendant's chances of receiving a fair trial had not been irreparably damaged." (*Id*. at p. 555.) Likewise, here, the singular mention that appellant had gotten out of jail without further details was not significant in the context of the trial, which revolved around the identification by Sallico. Moreover, any error was harmless. (See *People v. Garcia* (1984) 160 Cal.App.3d 82, 93, fn. 12 ["[I]n cases where jurors are improperly exposed to certain factual matters, the error is usually tested under the standard set out in *People v. Watson* (1956) 46 Cal.2d 818, 836."].) Sallico positively and consistently identified appellant, whom he knew, as one of the robbers. Under these circumstances, it is not reasonably probable that appellant

12

would have obtained a more favorable result had the incidental remark not been made. (Cf. *People v. Harris* (1994) 22 Cal.App.4th 1575, 1580-1582 [in light of overwhelming evidence of guilt, no reversible error where witness mentioned appellant's parole status].)

In order to prevail on a claim of ineffective assistance of counsel, appellant must show (1) that his trial counsel's representation fell below an objective standard for reasonableness under prevailing professional norms; and (2) that there was a reasonable probability that but for counsel's unprofessional errors, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Gray* (2005) 37 Cal.4th 168, 206-207; *People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) "In demonstrating prejudice, however, the petitioner must establish that as a result of counsel's failures the trial was unreliable or fundamentally unfair." (*In re Visciotti* (1996) 14 Cal.4th 325, 352.) Here, appellant has shown no prejudice resulting from his counsel's failure to seek an admonishment or to move for a mistrial. The court instructed the jury at the conclusion of the trial that, "[d]uring the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses. I ruled on the objections according to the law. If I sustained an objection, you must ignore the question. If the witness was not permitted to answer, do not guess what the answer might have been or why I ruled as I did. If I order[ed] testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose." (See CALCRIM No. 222.) Despite the court's failure to strike the brief reference, it is fair to assume that the jury understood from the court's sustaining defense counsel's objection that the testimony was not properly before it. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jury is presumed to follow court's instructions].) More important, for the reasons discussed above, the singular

13

mention that appellant had been in jail was not significant in the context of the trial, and did not render the trial unreliable or fundamentally unfair.  In light of the strong eyewitness testimony by Sallico, appellant cannot show that he would have attained a more favorable result absent counsel's alleged error.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

## DISPOSITION

The judgment is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.



MANELLA, J.


We concur:




EPSTEIN, P. J.




WILLHITE, J.