Filed 7/21/14  P. v. Burrough CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>NYKAZA DEWHITE BURROUGH,<br><br>　　　Defendant and Appellant. | B247287<br><br>(Los Angeles County<br>Super. Ct. No. TA120802) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin Filer, Judge.  Affirmed.

　　　　Carey D. Gorden, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Nykaza Dewhite Burrough was convicted by a jury of attempted robbery and misdemeanor battery. On appeal Burrough contends the trial court erred in admitting evidence of a prior uncharged robbery, the prosecutor committed misconduct on multiple instances during closing argument and the court misunderstood the scope of its discretion in setting the amount of the restitution fine. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An information charged Burrough with attempted first degree robbery of a public transit operator (Pen. Code, §§ 211, 664),[1] attempted carjacking (§§ 215, subd. (a), 664) and misdemeanor battery (§ 243.3). It was specially alleged Burrough had suffered two prior convictions for a serious or violent felony under the three strikes law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and two prior serious felony convictions (pleaded and tried together) within the meaning of section 667, subdivision (a)(1). Burrough pleaded not guilty and denied the special allegations.

2. *Trial*

According to the evidence at trial, on November 7, 2011 Burrough boarded a bus in Compton operated by the Los Angeles County Metropolitan Transit Authority. At the end of the route, after all the other passengers had left, Burrough approached Oscar Mayorga, the driver, and said, "Do me a favor." "Let me have money." When Mayorga said he did not carry money with him, Burrough persisted, demanding "Let me see your pocket." Burrough pushed Mayorga, held him down so he could not move and demanded, "Let me have your wallet." Mayorga refused. Burrough then tried to reach into Mayorga's right rear pants pocket. Finding nothing in the pocket, Burrough again asked, "Where's the money? Where's your wallet?" Frustrated, Burrough then said he was going to take the bus and drive it away. As Burrough tried to sit in the driver's seat, Mayorga flipped a switch disabling the bus. Mayorga quickly got out of the bus and called the Los Angeles County Sheriff's Department. When sheriff's deputies arrived,

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

they found Burrough in the driver's seat of the bus trying to start the bus. A video recording of the incident from a surveillance camera installed in the bus was played for the jury.

The prosecutor, over Burrough's objection, introduced evidence that in September 2001 Burrough had approached the driver of an ice cream truck, pointed something at him that appeared to be a gun and demanded money. The driver gave him $400. After a pretrial hearing pursuant to Evidence Code section 402, the court ruled the evidence was admissible to show intent and its probative value was not outweighed by any prejudicial effect. The court also provided a limiting instruction to the jury on its use of this evidence.[2]

Burrough did not testify. His theory of defense was that he had been under the influence of several drugs at the time of the offense and could not have formed the specific intent necessary to find him guilty of attempted robbery or carjacking. Toxicology tests showed Burrough had amphetamine, cocaine and marijuana in his system at the time of the incident.

Burrough also argued he was mentally ill and, absent proper medication, unable to form the specific intent to commit the offenses. He presented evidence that, while at the hospital following the incident, a consulting psychiatrist prescribed an antipsychotic medication and a mood stabilizer to calm Burrough's agitation. Burrough argued such powerful medicines would not have been prescribed absent an indication and history of some mental illness. Sheriff's deputies who saw Burrough at the hospital several days

---

[2] The court instructed the jury in accordance with CALCRIM No. 375 that, if it found by a preponderance of the evidence that Burrough had committed the prior uncharged offense, it may consider the evidence solely for the purpose of deciding whether Burrough "acted with the intent to commit a robbery in this case (OR) [¶] [t]he defendant's alleged actions were the result of mistake or accident. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and charged offenses. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

3

later found him to be acting disoriented and paranoid. Burrough asked them, "Did you catch the guys who were chasing me?"

Burrough's brother testified Burrough had suffered with some form of unidentified mental illness since he was a child. He became quickly agitated and paranoid when he did not take his medication. Burrough's counsel also emphasized portions of the video recording showing Burrough walking up and down the aisle of the bus several times prior to the robbery showed Burrough apparently agitated each time the bus stopped. He argued the evidence supported his theory Burrough was mentally ill and paranoid.

3. *The Verdict and Sentence*

The jury acquitted Burrough of attempted carjacking; it found him guilty of attempted robbery and misdemeanor battery. In a bifurcated bench trial the court found the special allegations true. The court dismissed one of the two prior serious felony convictions pursuant to section 1385 for the purpose of sentencing under the three strikes law only, sentenced Burrough to nine years in state prison and imposed statutory fees, fines and assessments.

**DISCUSSION**

1. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Burrough's Prior, Uncharged Robbery*

a. *General principles governing evidence of uncharged misconduct*

California law has long precluded use of evidence of a person's character (a predisposition or propensity to engage in a particular type of behavior) as a basis for an inference that he or she acted in conformity with that character on a particular occasion: Evidence Code section 1101, subdivision (a),[3] "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion."

_____

[3] Evidence Code section 1101, subdivision (a), provides, "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

4

(*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).)  Indeed, "'[t]he rule excluding evidence of criminal propensity is nearly three centuries old in the common law.'" (*People v. Falsetta* (1999) 21 Cal.4th 903, 913.)

Evidence Code section 1101, subdivision (b),[4] clarifies, however, that this rule "does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition."  (*Ewoldt*, *supra*, 7 Cal.4th at p. 393; accord, *People v. Jones* (2013) 57 Cal.4th 899, 930; *People v. Edwards* (2013) 57 Cal.4th 658, 711; see *People v. Falsetta*, *supra*, 21 Cal.4th at p. 914 ["the rule against admitting evidence of the defendant's other bad acts to prove his present conduct was subject to far-ranging exceptions," citing Evid. Code, § 1101, subd. (b)].)  "'[E]vidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes [citation] . . . only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent. . . .'" (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.)  The least degree of similarity between the uncharged act and the charged offense is required to prove intent.  (*Ewoldt,* at p. 402; *Jones* at p. 930.)  "For this purpose, the uncharged crimes need only be 'sufficiently similar [to the charged offenses] to support the inference that the defendant . . . probably harbor[ed] the same intent in each instance.'" (*People v. Kipp* (1998) 18 Cal.4th 349, 371; accord, *Ewoldt*, at p. 403.)

In addition to its relevance to an issue other than predisposition or propensity, to be admissible under Evidence Code section 1101, subdivision (b), the probative value of

---

[4]     Evidence Code section 1101, subdivision (b), provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

the evidence of the uncharged crimes "must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Kipp, supra,* 18 Cal.4th at p. 371; accord, *People v. Carter, supra,* 36 Cal.4th at p. 1149.)

The trial court's determination of the admissibility of evidence of uncharged offenses is reviewed for abuse of discretion. (*People v. Kipp, supra,* 18 Cal.4th at p. 369 ["[o]n appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion"].) Likewise, whether the probative value is outweighed by the prejudicial effect of the evidence is subject to abuse-of-discretion review. (*People v. Davis* (2009) 46 Cal.4th 539, 601; *People v. Gray* (2005) 37 Cal.4th 168, 202.)

b. *The uncharged robbery was admissible to prove intent*

Burrough contends evidence of his uncharged robbery of an ice cream truck driver a decade earlier was too remote and too dissimilar—it involved a gun and no evidence of drug use or mental instability—to be relevant to the issue of his intent during the instant offense. As the trial court recognized in admitting the evidence, however, Burrough's intent at the time of the offense was the critical issue in the case.[5] The defense theory was that Burrough's crime was driven by mental illness and drug consumption. Evidence of the uncharged robbery against another commercial driver years earlier was offered in direct contravention of that position, suggesting that in both instances Burrough intended to commit a robbery against the driver of a commercial vehicle. While not identical, the offenses were sufficiently similar to meet the relatively minimal standard required by Evidence Code section 1101, subdivision (b). (See *Ewoldt, supra,* 7 Cal.4th at p. 403;

---

[5] At the Evidence Code section 402 hearing, the court stated, "We're going to have two extreme versions, at least as far as mental requirement, [of] what was going on and what was happening at the time. The People are going to say he certainly intended to take the bus and commit[] the thefts, and obviously there's going to be a different argument from the defense. . . . [W]hat was going on in his head, what his intentions were and what he was intending to do at the time he was acting, is going to be the, if not one of the key issues for this jury."

6

*People v. Kipp, supra,* 18 Cal.4th at p. 371.)  The trial court's determination such evidence was admissible and not sufficiently remote as to be more prejudicial than probative was well within its discretion.  (See *People v. Cole* (2004) 33 Cal.4th 1158, 1194; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 205 [prior uncharged violent act between seven and 10 years earlier was admissible to show intent; "we cannot conclude that the passage of time significantly lessened the probative value of the evidence"].)

    2.  *The Prosecutor's Comments During Closing Argument Do Not Compel Reversal*

        a.  *Governing law on prosecutorial misconduct*

"'The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution only when it comprises a pattern of conduct so "egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"  [Citations.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"'"'"  (*People v. Navarette* (2003) 30 Cal.4th 458, 506; accord, *People v. Morales* (2001) 25 Cal.4th 34, 44.)  To determine whether misconduct has occurred, the reviewing court evaluates how the remarks would, or could, have been understood by a reasonable juror.  (See, e.g., *People v. Cummings* (1993) 4 Cal.4th 1233, 1302 ["[i]f there is a reasonable likelihood that the jury would understand the prosecutor's statements as an assertion that defense counsel sought to deceive the jury, misconduct would be established"].)

        b.  *"I'm in the truth business" — Burrough's failure to object to the comment results in forfeiture of that argument on appeal*

At the beginning of closing argument the prosecutor, Adewale Oduye, stated, "[I]t is my burden to prove this case to you beyond a reasonable doubt, and that's a burden that I do not shy away from.  Because when people ask me what business I'm in, I tell them that I'm in the truth business.  That's my business, . . . to present the evidence and

present the truth to you. That's the business I'm in, and part of that is to present the law to you."

Burrough contends the comment about being in the "truth business" amounted to improper vouching for the veracity of the People's witnesses and improper expression of the prosecutor's belief in their credibility. (See *People v. Turner* (2004) 34 Cal.4th 406, 432-433 ["A prosecutor may make 'assurances regarding the apparent honesty or reliability of' a witness 'based on the "facts of the record and the inferences reasonably drawn therefrom."' [Citation.] But a 'prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.'"]; *People v. Martinez* (2010) 47 Cal.4th 911, 959 [same].) We agree the comment was improper, but Burrough did not object at trial; and there is no indication an objection would not have been sustained or that a clarifying instruction would not have cured any harm that may have occurred. Accordingly, Burrough has forfeited this claim on appeal. (*People v. Redd* (2010) 48 Cal.4th 691, 734 ["'[t]o preserve a claim of prosecutorial misconduct for appeal, a defendant must object and seek an admonition if an objection and admonition would have cured the harm'"]; *People v. Jones* (2003) 29 Cal.4th 1229, 1260.)

c. *Prosecutor's remark concerning nontestifying defendant's demeanor*

Arguing Burrough had not been mentally ill during the incident, the prosecutor told the jury to consider Burrough's demeanor as he sat in court: "He's not jumping up and down. So, is he on his meds now? And if he is, what would explain when he talked to the cops when he's in the hospital for four days. All of a sudden he's acting paranoid?" Burrough contends this statement was improper for two reasons: (1) It constituted a reference to facts not in evidence; and (2) it amounted to a comment on his failure to testify in violation of *Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].

Unless a defendant puts his or her courtroom behavior at issue, it is improper during the guilt phase of a trial for the prosecutor to comment on the demeanor of a nontestifying defendant. (*People v. Blacksher* (2011) 52 Cal.4th 769, 840 ["[i]t is

8

misconduct, however, for a prosecutor to comment on a nontestifying defendant's courtroom demeanor or behavior during the guilt phase of the trial"]; *People v. Smith* (2007) 40 Cal.4th 483, 524 [same]; *People v. Heishman* (1988) 45 Cal.3d 147, 197 [same]; *People v. Garcia* (1984) 160 Cal.App.3d 82, 91 [evidence of nontestifying defendant's demeanor is irrelevant since demeanor evidence "is only relevant as it bears on the credibility of a [testifying] witness"]; cf. *People v. Duncan* (1991) 53 Cal.3d 955, 977 [prosecutor did not commit misconduct by briefly commenting on nontestifying defendant's calm demeanor in courtroom; "prosecutor was entitled to point out that modest behavior in the courtroom was not inconsistent with violent conduct under other less structured and controlled circumstances"].)

Although Burrough did not object to the comment when made, the court inserted its own objection at a sidebar conference, telling the prosecutor, "[W]hen you said the best evidence is to look at the defendant in court[,] [h]e hasn't been acting out, he hasn't been doing anything. That is not evidence, and that clearly I think was an improper statement because the jury cannot consider the defendant's conduct sitting there in court as evidence. That's evidence against him which is what you seem to invite them to do. And the other thing that concerns me is you said this refutes his claim he's taking medications when, in fact, you know he's being medicated and that's why he's sitting there as docile as he is." The court told the prosecutor it would consider how best to remedy any harm caused by the remark. Soon thereafter, the court provided a curative instruction: "Let me just remind you that evidence comes from this witness stand and [the] witness stand only and the attorneys' conduct, Mr. Burrough's conduct in the courtroom, my staff's conduct in the courtroom, my conduct in the courtroom, that's not evidence. Evidence comes only from this witness stand."[6]

Considering the record as a whole, prosecutor Oduye's comment, although plainly improper, does not compel reversal. The remark, reasonably interpreted, amounted to a

---

[6]     The court denied a subsequent motion for mistrial by defense counsel, concluding its curative instruction had remedied any harm likely to have resulted from the comment.

comment on facts "outside the record," that is, facts not subject to consideration by the jury. Nonetheless, the court cured any associated harm when it instructed the jury specifically that Burrough's conduct in the courtroom was not evidence and could not be considered by them in determining whether he was guilty of the crimes charged. (See *People v. Delgado* (1993) 5 Cal.4th 312, 331 [jury presumed to follow court's instructions]; *People v. Ochoa* (1998) 19 Cal.4th 353, 427 [when claim of misconduct is based on arguments or comments prosecutor made to the jury, the question of prejudice is determined by "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion'"]; *People v. Morales* (2001) 25 Cal.4th 34, 47.) The court's prompt, diligent and thorough actions amply dispelled any possible prejudice that may have otherwise resulted from the prosecutor's remark.

Burrough alternatively contends the statement concerning his courtroom demeanor amounted to an improper comment on his failure to testify in violation of *Griffin v. California, supra,* 380 U.S. at pages 613 to 614 (state may not use defendant's silence as evidence of his guilt). (See *People v. Garcia, supra,* 160 Cal.App.3d 82, 93.) Burrough did not object on this ground, nor was it raised during the sidebar with the court when it sua sponte expressed its concern. Accordingly, it has been forfeited. (*People v. Mincey* (1992) 2 Cal.4th 408, 446 [failure to object on grounds of *Griffin* error forfeits argument on appeal].) The argument is also without merit. Oduye's comment, although an improper invitation for the jury to consider facts not in evidence, did not in any way implicate Burrough's election not to testify; Burrough does not cite any relevant authority to suggest otherwise.

### d. *Prosecutor's remark suggesting Burrough failed to prove something*

During closing argument the prosecutor argued, "Voluntary intoxication does not mean let me get on drugs and then I [can] do whatever I want to do and then I can come to court and say I don't know what I was doing. That's not what the law allows for. It does not allow for that. And like I said before, the question is [Burrough] has to show he had no idea—" The defense interjected an objection, stating, "I don't have to show

10

anything." The court sustained the objection and admonished the jury, "I told you [in my instructions] which party has the burden of proof."

Burrough contends the remark improperly shifted the burden of proof to him to present a defense. That argument, unsuccessful in connection with his motion for mistrial in the trial court, fails here for the same reason. Although the remark suggested the defendant bore the burden of proof, the trial court immediately sustained the defense objection and properly referred the jury to its instructions that the prosecution bore the burden to prove each element of the offense beyond a reasonable doubt. Any possible prejudice was promptly and adequately cured.

e. *Prosecutor's remark allegedly denigrating defense counsel*

Burrough contends the prosecutor denigrated his defense counsel and accused her of fabricating a defense when he remarked during closing argument, "What I want you to think about is the things she's saying. It's kind of like when you have—you're boiling spaghetti and you throw it on the wall to see if it sticks. She's throwing everything she possibly can on the wall to see if it sticks. First, it's he didn't form the intent because he has a mental disease, but wait it could be also that it was because he was on meth and on weed and on some other drug. Or it could be because the doctor said he did an evaluation and he spoke to the defendant and the defendant, who is mentally impaired, [and] so-called out of his mind tells the doctor, doctor, this is my medical history. It all started when I was nine years old and that's when my mental disease started. And I suffer from paranoia, schizophrenia. She's throwing things to the wall to see if it sticks." The trial court overruled Burrough's objection and reminded the jury, "Keep in mind what the attorneys say is not evidence. You're to follow my instructions on the law."

A prosecutor commits misconduct when he or she disparages defense counsel or accuses counsel of fabricating a defense without factual support. (See *People v. Cash* (2002) 28 Cal.4th 703, 731 ["[i]t is misconduct for the prosecutor in argument to impugn the integrity of defense counsel or to suggest defense counsel has fabricated a defense"]; *People v. Bemore* (2000) 22 Cal.4th 809, 846 [same].) The prosecutor's remarks here were neither personally disparaging nor suggestive of a fabricated defense. To the

11

contrary, when considered in context, the prosecutor simply highlighted the theories of the defense—voluntary intoxication and mental illness—and questioned the evidence supporting them. (See *People v. Medina* (1995) 11 Cal.4th 694, 759 [prosecutor's statement that "'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something'" was not misconduct; it suggested neither a fabrication of a defense nor constituted an attack on counsel's integrity]; *People v. Redd, supra,* 48 Cal.4th at p. 735 [comment concerning defense counsel's "speculation" was proper comment on evidence or lack thereof].)

In sum, the record demonstrates the prosecutor in closing argument made some proper remarks, others improper and a few close to the line. More significantly, it shows a trial court carefully monitoring the proceedings and curing, both sua sponte and following an objection, any potential for harm. Whether considered separately or cumulatively, none of the remarks preserved by objection and identified and addressed on the merits, when viewed together with the trial court's prompt remedial action, so infected the trial as to warrant reversal.

3. *The Trial Court Did Not Misunderstand Its Discretion To Impose a Lesser Restitution Fine*

Section 1202.4, subdivision (b), requires the court to impose a restitution fine in every case where a person is convicted of a crime "unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." At the time of the offense, subdivision (b)(1) vested the court with the discretion to determine the amount of the fine, so long as the amount was not less than $200 or more than $10,000.[7] (See Stats. 2011, ch. 45, § 1.) Former subdivision (b)(2) suggested (but did not require) a calculation to use in setting the fine: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars

---

[7] Section 1202.4, subdivision (b), has since been amended to increase the statutory minimum amount of the mandatory restitution fine from $200 to $240 starting January 1, 2012; to $280, starting January 1, 2013; and to $300, starting January 1, 2014. (See Stats. 2012, ch. 873, § 1.5.)

($200) [(the minimum fine pursuant to paragraph (1))] multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (*Ibid.*)

After sentencing Burrough to nine years in state prison, the court stated, "There's a mandatory restitution fine, $1,800. That's pursuant to the formula that's laid out in Penal Code section 1202.4(b)." The defendant objected but did not direct his objection to the amount of the fine. The court overruled the objection stating, "I've noted that. I'm going to follow the statute. And I have imposed the minimum of $1,800 that can be collected from your prison earnings. And there also is a parole revocation fine of $1,800 pursuant to Penal Code section 1202.45. That will be stayed."

Burrough acknowledges the amount of the fine was statutorily authorized, but contends the court misunderstood the scope of its discretion to set a lesser fine. The court, he argues, erroneously believed the statute mandated, rather than authorized, the $1,800 amount. In fact, the statute permitted the court to select any fine within the $200 to $10,000 range. Although Burrough's interpretation of former section 1202.4, subdivision (b)(1) and (2) is correct, his characterization of the record is not. Burrough's objection, directed to the imposition of the fine rather than the amount, led the court to explain the fine was mandatory.[8] The court then stated it was electing to proceed in accordance with the statute. Nothing in this record suggests the court misunderstood its discretion under former section 1202.4, subdivision (b).

---

[8] If counsel had intended to object to the amount of the fine, it was not accomplished with the clarity required to preserve that objection for appeal.

## DISPOSITION

The judgment is affirmed.


                                        PERLUSS, P. J.


We concur:


        WOODS, J.


        SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.