Filed 8/5/16  P. v. Washington CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062698 |
| v. | (Super.Ct.No. RIF1303885) |
| JONATHON EDWARD WASHINGTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge.

Affirmed in part; reversed in part with directions.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

The jury convicted defendant of five counts of robbery (Pen. Code, § 211[1]; counts 1-5) and one count of receiving stolen property (§ 496; count 6). The jury also found that defendant personally used a firearm in the commission of all five robberies. Defendant was sentenced to 17 years 4 months in state prison, consisting of three years for count 1, plus 10 years for the personal firearm enhancement, and one year for count 5, plus three years four months for the personal firearm enhancement. The court stayed sentencing on the remaining counts.

Defendant contends there was insufficient evidence that he personally used a firearm in the commission of the five robberies. Defendant also contends he should not have been convicted of receiving the same stolen property that he acquired in the robbery, to which respondent agrees.

After reviewing the record, including both surveillance videos, we conclude that substantial evidence supported all of the personal firearm enhancements. However, we agree with the parties that defendant was improperly convicted of receiving stolen property. Accordingly, we reverse the conviction in count 6 of receiving stolen property. In all other respects, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

I

STATEMENT OF FACTS

A.      *The First Robbery*

At around 9:30 p.m. on November 29, 2013, defendant and another man entered Goody's Food Store in Riverside wearing masks and gloves. One was wearing a "skeleton mask" and the other was wearing a black mask.[2] Their faces were mostly covered. Two customers, Justin and James Foster,[3] storeowner Kahlid Ramahi, and employee Jose Cruz were in the store at the time.

The black-masked robber pointed a gun at Justin and told him to get on the floor. Both Justin and James were scared and got on the floor. Justin gave the robber a money clip and James gave him his wallet. Justin only saw one robber, but James saw two.

The skeleton-masked robber then pushed Ramahi to the cash register and told Ramahi to give him all the money in it. Ramahi gave him approximately $300. He was scared. Although Ramahi did not see the skeleton-masked robber holding a gun at the time, when he later reviewed surveillance footage, he saw that the skeleton-masked robber had held a gun to him. James saw one of the robbers point a gun at Ramahi, but did not remember which one.

---

[2] Although one witness identified the second mask as "red", the other witnesses called it "black," as confirmed by a review of surveillance footage. The evidence supported the identification of defendant as the black-masked robber, as explained below.

[3] To avoid confusion we will refer to Justin and James Foster by their first names.

While Ramahi was being robbed, store employee Cruz walked into the store from a back room. Cruz saw the skeleton-masked robber holding a gun at Ramahi. While Cruz was watching Ramahi, the black-masked robber came up to Cruz and demanded his wallet. Cruz had not realized that there was a second robber until that moment. Cruz said that he did not have a wallet and the black-masked robber took a gun out of his waistband and put it to Cruz's temple. He frisked Cruz and found Cruz's wallet and cell phone, both of which he took. Cruz had $600 in his wallet. Cruz complied with the robber's demand for him to lie down on the floor because he "had no other option." Both robbers ran out of the store and Ramahi called the police.

The jury watched a surveillance video recording of the robbery. The responding officer testified as to his interpretation of the events recorded on the video. It appeared to the officer that the same robber who initially held a gun to Ramahi also forced Cruz to the ground. Cruz testified that in the surveillance video "you're unable to see everything very well."

B.  *The Second Robbery*

At around 9:45 p.m. that same night, the two robbers entered Palm Liquor, approximately one mile away from the first location. The black-masked man held a gun to cashier Yadwinder Singh's head and ordered him to open the cash register, which he did. The second robber took approximately $250 in cash from the register and searched Singh's pockets. He found an ammunition magazine in Singh's pocket. The robbers told Singh that "they" would shoot him if he did not give "them" the gun to which the

4

magazine belonged. The black-masked man took Singh's gun and handed it to the second robber, who, in turn, pocketed it. The robbers took some liquor bottles, including Patron tequila and Ciroc vodka, and left. The jury watched a surveillance video recording of the second robbery.

In the video recordings of the two robberies, and in still photographs captured from the videos, the top part of the black-masked man's face and complexion are visible (including his eyes and eyebrows and part of his nose and forehead). A bump is also visible in the back of the black-masked man's hoodie.[4]

C.    *Defendant's Arrest*

On December 1, 2013, defendant led police on an extended chase in Long Beach during which he ran numerous stop signs and crashed into a parked car. Defendant fled on foot into an apartment complex and was found in a shed on the property. Police officers found marijuana, $454 in cash, and Cruz's cell phone in defendant's pockets. In a search of the cell phone, officers found a "selfie" of defendant and a second picture of a

---

[4] In closing argument, the prosecutor compared defendant's courtroom appearance with the video and photographic evidence: "[L]ook at it closely and compare things like his eyes, eyebrows, his forehead, and then you look at how his hair must have been pulled back in there, in his hoodie, you see the lump in the back of [his] sweatshirt." Although the record does not contain an explicit description of defendant's appearance and hair at trial, he was visible to the jury and the court. (See *People v. Montalvo* (1971) 4 Cal.3d 328, 335 [jury's observation of defendant's physical courtroom appearance constitutes non-testimonial evidence]; *People v. Prince* (1988) 203 Cal.App.3d 848, 855 [describing as " 'routine' " the " 'practice of a jury viewing the defendant's physical appearance to see if it comports with a physical description given by a witness or to determine if the physical appearance of a defendant supports a factual finding that must be made by the trier of fact' "], italics omitted; *People v. Garcia* (1984) 160 Cal.App.3d 82, 91, fn. 7 [same].)

handgun, two magazines, a bottle of Patron tequila, a bottle of Ciroc vodka, and "a bunch of cash that was laid out almost like . . . a trophy picture." The second picture was taken at 1:56 a.m. on the morning after the robberies.

During the foot pursuit, defendant discarded a loaded handgun which was matched to the one reported stolen by Singh. In a search of defendant's car, officers found a half drunk bottle of Ciroc vodka whose serial number matched the one stolen from Palm Liquor. They also found the ammunition magazine for Singh's gun, gloves, a flashlight, and a screwdriver.

In a police interview the next day, defendant told detectives that he owned two cell phones and that he had bought Cruz's cell phone on November 28 or 29 from a man named "Da" in Pasadena. Defendant initially denied knowing about the ammunition magazine in the car or the gun, but later admitted that they were his and said that he had bought them from a man on November 27. Defendant said that the $454 in cash was his personal savings from "welfare checks." Defendant did not know how the photograph of the stolen property got on the cell phone. Defendant denied ever having been to Riverside and said that he lived with his grandmother in Pasadena.

Police officers searched the grandmother's apartment and found among defendant's belongings another bottle of Patron taken in the Palm Liquor robbery, a box of 40 nine-millimeter rounds, and a clown mask. The nine-millimeter rounds did not fit Singh's gun.

6

Defendant's mother showed up while the police were searching the grandmother's apartment. Based on suspicion that defendant had used his mother's phone during the robbery, the police confiscated her phone. The detectives discovered that on November 29, 2013, at 9:51 p.m., a call was made with the phone from Riverside. By 1:08 a.m., the phone was in Pasadena, where another call was made.

II

DISCUSSION

1. *Sufficiency of the Evidence for the Personal Use of a Firearm Enhancement*

Defendant contends that there was insufficient evidence that defendant used a firearm in the commission of all five robberies. We find that substantial evidence supported the firearm enhancements on all counts.

When considering a challenge to the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains reasonable, solid, and credible evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988.) We employ this same standard in evaluating both direct and circumstantial evidence. (*Ibid.*; *People v. Towler* (1982) 31 Cal.3d 105, 118-119.) We do not invade the province of the jury by reweighing the evidence, or by re-reconciling competing circumstances and redrawing competing inferences from those circumstances; it is the jury—not the appellate court—which must be convinced of the

defendant's guilt beyond a reasonable doubt. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055-1056; *People v. Nelson* (2011) 51 Cal.4th 198, 210.) Even the testimony of a single witness may provide the jury with sufficient evidence to support a conviction. (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Here, the first four counts of robbery with the personal use of a firearm enhancement were for the robbery that took place at Goody's Market. In regard to that robbery, Cruz testified that both robbers had guns because as he was watching one robber hold a gun to Ramahi, the second robber came over to him and used a gun to force him to cooperate.

Defendant's attempts to use Ramahi's testimony and the surveillance video to discredit Cruz are unavailing. The fact that Ramahi only saw one gun does not confirm that the second robber did not have a gun in his waistband as Cruz testified. For that matter, Ramahi had not seen any guns at all until he reviewed the surveillance video. And as for the video itself, having reviewed the video, despite the multiple angles, this Court understands why its interpretation was open for the jury to believe Cruz. As Cruz testified and the prosecutor argued in closing argument, the video was unclear and did not allow the viewer to "see everything."

Moreover, regardless of Cruz's testimony, and as to both robberies (i.e., all five counts), the jury permissibly relied on the prosecutor's argument that it could identify defendant in the surveillance videos as the black-masked robber out of the two of them based on exposed facial characteristics "like his eyes, eyebrows, [and] forehead," and

8

from a lump in the back of his hoodie sweatshirt where defendant's hair "must have been pulled back in there." Although this Court does not invade the province of the jury in venturing to identify defendant as the black-masked robber, the video does show the lump to which the prosecutor was referring. Thus, substantial evidence supports the jury's finding that defendant personally used a firearm in all five robbery counts.

       2.       *Conviction for Both Robbery and Receiving Stolen Property*

Defendant also contends that he should not have been convicted of receiving the same stolen property which he acquired in the robbery. Respondent agrees. This Court accepts respondent's concession.

A defendant may not be convicted of theft and receipt of stolen property under section 496, subdivision (a). (*People v. Ceja* (2010) 49 Cal.4th 1, 4 (*Ceja*).) Our Supreme Court has extended the rule to robbery (which requires a theft) and receiving the same property taken. (*People v. Smith* (2007) 40 Cal.4th 483, 522.) The proper remedy is to reverse the receiving conviction while allowing the robbery conviction to stand. (*Ceja*, at pp. 9-10.)

Here, the trial court failed to instruct the jury of this prohibition (CALCRIM No. 3516) and defendant was convicted of both robbery and receiving the property he had taken from his victims. Accordingly, we reverse the conviction for receiving stolen property in count 6.

III

DISPOSITION

The conviction for receiving stolen property in count 6 is reversed.  In all other respects, the judgment is affirmed.  The clerk of the superior court is ordered to prepare an amended abstract of judgment and to forward a certified copy of same to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ          

P. J.

We concur:


HOLLENHORST     

           J.


SLOUGH          

           J.