Filed 4/7/23  P. v. Cuadras CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C093607 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF19-0822) |
| v. | |
| ARMANDO ARIAS CUADRAS, | |
| Defendant and Appellant. | |

In the midst of the global COVID-19 pandemic, a jury found defendant Armando Arias Cuadras guilty of premeditated murder with special circumstances; torture with great bodily injury; aggravated mayhem; and first degree burglary of an inhabited dwelling with a violent felony enhancement allegation.  On appeal, defendant argues the judgment must be reversed because certain health and safety protocols implemented during jury selection and trial in response to the pandemic violated his constitutional

1

rights. In particular, defendant argues (1) the trial court violated his right to a fair trial by refusing to order prospective members of the jury to remove any facial coverings (masks) during voir dire; (2) the trial court violated his rights to confront witnesses and to a fair trial by requiring members of the jury to sit in the public gallery instead of the jury box or, to the extent this contention was forfeited, that his counsel rendered ineffective assistance; and (3) that defense counsel rendered ineffective assistance by asking defendant to wear a face mask throughout trial. Defendant also argues he is entitled to reversal based on the cumulative effect of the errors. Finding no error, we affirm.

FACTUAL BACKGROUND

We briefly summarize the facts underlying defendant's convictions, which are unnecessary to the resolution of this appeal. In accord with the usual rules on appeal, we state the facts in the manner most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

On January 23, 2013, the victim, 94-year-old Leola Shreves, was found dead, facedown in her bedroom, covered in blood. The cause of death was determined to be multiple blunt force injuries and attempted strangulation. The evidence showed she had been severely beaten before death. The precise time of death was unclear, but circumstantial evidence suggested the killing occurred late on January 18, 2013, or early in the morning on January 19, 2013.

Investigators found and collected blood samples from numerous locations around the victim's home, including a door in the kitchen, the living room wall, bedroom curtains, a mirror on the door between the bathroom and bedroom, and the wall around victim's bed. Investigators also collected scrapings from underneath the victim's fingernails.

Investigators developed a DNA profile of the suspect from the biological material collected at the crime scene, and then compared it with the profiles contained in the Combined DNA Index System database. Initially, there were no matches. However, in

2018, based on a familial DNA search, investigators identified defendant as a potential suspect. Investigators then collected a sample of defendant's DNA and compared it to the crime scene DNA evidence. Defendant's DNA was found to match blood samples collected from the crime scene, and defendant could not be excluded as a potential contributor to the material collected from the victim's fingernails.

In an interview with detectives following his arrest, defendant initially denied any knowledge of the killing. However, after being confronted with the DNA evidence, defendant eventually admitted to entering the victim's house and "stomping somebody out," although he believed it had been a man. Defendant claimed that he was drunk to the point that he barely remembered what transpired, but he recalled being "out of control."

During the interview, defendant also recalled that around the time of the killing law enforcement officers had found him—intoxicated—lying in the street near the victim's home. Yuba City police records corroborated that defendant was contacted by officers around 3:30 a.m. on January 19, 2013, near the victim's home. Medical records relating to that incident revealed defendant had a two-inch laceration on his right arm, swollen knuckles, and that he complained of a sore knee.

PROCEDURAL BACKGROUND

The Sutter County District Attorney filed an amended information charging defendant with premeditated murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a)—count 1);[1] torture with great bodily injury (§§ 206, 12022.7—count 2); aggravated mayhem (§ 205—count 3); and first degree burglary of an inhabited dwelling. (§ 459—count 4.) As to count 1, the information further alleged three special circumstance allegations: that the murder was committed while defendant was engaged in the commission or attempted commission of burglary (§ 190.2, subd. (a)(17)(G)) and mayhem (§ 190.2, subd.

---

[1]     Undesignated section references are to the Penal Code.

(a)(17)(J)), and that the murder was intentional and involved the infliction of torture. (§ 190.2, subd. (a)(18).) As to count 4, the information also alleged that the burglary was a violent felony within the meaning of section 667.5, subdivision (c)(21) because "another person, other than an accomplice, was present in the residence during the commission of the [burglary]."

A.    *COVID-19 procedures during trial*

Defendant's trial began in October 2020, in the early months of the COVID-19 pandemic. At the time, "there was no vaccine yet available to protect against the spread of [the virus] and the best scientific evidence demonstrated the wearing of face masks was effective at reducing the spread of the virus and the risk of infection in indoor settings." (*People v. Lopez* (2022) 75 Cal.App.5th 227, 233 (*Lopez*).)

Due to the pandemic, the court imposed a variety of health and safety measures to protect the parties, court personnel, the jury, and the public during the trial. The measures included health screenings, enhanced cleaning procedures, and reconfigured seating arrangements to ensure social distancing.

For purposes of voir dire, the trial court explained that prospective jurors would be seated in the audience of the courtroom, with eight potential jurors spread out on the right side of the room and another eight spread out on the left side of the room. A second courtroom would be used to allow other prospective jurors to watch jury selection via live streaming. The trial court additionally explained that most of the jury would remain seated in the audience during trial and that the court would use audio and visual resources to allow the jury to be spaced out in the audience. To ensure defendant's right to consult with counsel was not infringed, the court permitted defendant to sit near counsel at the defense table (approximately one or two feet apart). Defense counsel did not object to the proposed seating configurations.

Except when social distancing could not be maintained, the trial court did not require witnesses or attorneys to wear masks during trial. All witnesses agreed not to

4

wear masks while testifying. With respect to jurors, the court indicated that it would not require jurors to wear a mask, but if a juror chose to wear a mask, the court would not order the juror to remove it. The record on appeal does not clearly establish how many jurors were masked during jury selection and trial, but evidence in the record suggests that at least one juror wore a mask during at least part of the trial.

Defense counsel argued that prospective jurors should be required to remove their masks during jury selection "so we can talk to them and see their facial expressions." Defense counsel warned that it was a Fifth Amendment issue. The court rejected counsel's request, confirming that it would not order prospective jurors to take down their masks. The court acknowledged defendant's constitutional rights but noted the need to balance the health and safety of courtroom participants during the pandemic. The court noted that it had conducted another trial during the COVID pandemic and felt that the attitude and expressions of a prospective juror could be appropriately gauged when the juror was wearing a mask. The court added that it would be granting deferrals for potential jurors who were uncomfortable serving jury duty during the pandemic or who were part of a high-risk health group.

Because defendant was going to be seated at the defense table, defense counsel requested that defendant wear a mask throughout trial. The trial court expressed some general concerns with this request, but defense counsel noted that he had discussed it with defendant, who was at high risk for complications from COVID, and they agreed that defendant should wear a mask, both for his protection and the protection of others. When asked by the court, defendant confirmed that he was comfortable wearing a mask during trial. The court accepted the decision. The court also admonished the jury not to consider why an individual is or is not wearing a mask during trial.

B. *Verdict and sentencing*

The jury found defendant guilty on all four counts, and found all the enhancement allegations (as to counts 1 & 4) true. On January 22, 2021, the court sentenced defendant

5

to life without the possibility of parole on count 1. The court imposed life sentences for counts 2 and 3, and the upper term of six years for count 4, but stayed the execution of each of these sentences under section 654.

Defendant filed a timely notice of appeal.

## DISCUSSION

## I

### *Facial Coverings of Prospective Jurors*

Defendant contends the trial court's refusal to order prospective members of the jury to remove any facial coverings (masks) during voir dire violated his constitutional right to a fair trial. We disagree.

A. *Legal principles*

A defendant has a fundamental constitutional right to a fair trial by an impartial jury. (*People v. Breceda* (2022) 76 Cal.App.5th 71, 89; accord, *People v. Kocontes* (2022) 86 Cal.App.5th 787, 870, 878-879 (*Kocontes*).) "An impartial jury is one in which no member has been improperly influenced and every member is capable and willing to decide the case solely on the evidence before it. [Citation.]" (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1115.) To effectuate this right, prospective jurors are subjected to voir dire examination under oath to uncover any biases and determine whether a prospective juror can and will follow the law. (*Ibid.*; *People v. Chaney* (1991) 234 Cal.App.3d 853, 860.)

" ' " '[D]espite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later . . . in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.' " ' [Citations.] For these reasons, the court's manner of conducting voir dire will not be disturbed on appeal unless it renders the trial fundamentally unfair." (*People v. Whalen* (2013) 56 Cal.4th 1, 30-31, overruled on other grounds by *People v. Romero*

6

*and Self* (2015) 62 Cal.4th 1, 44, fn. 17; accord, *People v. Fuiava* (2012) 53 Cal.4th 622, 653-654.) Where, as here, there are no disputed facts, we review de novo whether the court's decision to allow prospective jurors to wear masks deprived defendant of a fair trial or his rights under the confrontation clause. (See *People v. Alvarez* (2022) 75 Cal.App.5th 28, 35-36 (*Alvarez*).)

B.    *Analysis*

Defendant argues that the court erred by failing to require prospective jurors to remove their masks during voir dire. He contends the trial court's decision hindered counsel's ability to read the prospective jurors' facial expressions and detect potential bias, thereby depriving him of a fair trial. He contends this was structural error, requiring automatic reversal.

We are unpersuaded that the decision to allow prospective jurors to wear masks compromised defendant's right to an impartial jury. Although we acknowledge that observing a prospective juror's demeanor is important, defendant's argument is premised on the notion that it is impossible to assess demeanor without being able to see a juror's full facial expressions. We are unaware of any authority—and defendant has not cited any—holding that the right to an impartial jury demands the entirety of a juror's face be visible during voir dire.

The federal courts that have considered this issue repeatedly have reached the opposite conclusion. (See, e.g., *United States v. Tagliaferro* (S.D.N.Y. 2021) 531 F.Supp.3d 844, 851 (*Tagliaferro*); *United States v. Thompson* (D.N.M. 2021) 543 F.Supp.3d 1156, 1164; *United States v. Ayala-Vieyra* (6th Cir. Jan. 21, 2022, No. 21-1177) 2022 U.S.App. Lexis 1783, at pp. *12-13 & fn. 1 [nonpub. opn.] and cases cited therein.)[2] The reasoning of these cases is that allowing prospective jurors to wear masks

---

[2]    Unpublished federal decisions can be cited as persuasive authority. (*Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1283, fn. 8.)

during jury selection does not unconstitutionally infringe the defendant's constitutional rights because there are other, adequate means to assess a prospective juror's demeanor and potential bias. (See, e.g., *Tagliaferro, supra*, 531 F.Supp.3d at p. 851; *United States v. Crittenden* (M.D.Ga. Aug. 21, 2020, No. 4:20-CR-7 (CDL)) 2020 U.S.Dist. Lexis 151950, at pp. *20, 23 [nonpub. opn.] (*Crittenden*).) Thus, to whatever extent masks may hinder counsel's ability to read the facial expressions of prospective jurors, they are justified by the important interest of protecting the health and safety of courtroom participants from a highly contagious and potentially lethal virus. (*Tagliaferro*, at p. 850; *Crittenden, supra*, at p. *22.) We find the reasoning of these cases persuasive.

Covering the nose and mouth of a prospective juror does not significantly obstruct the ability to observe demeanor because "[d]emeanor consists of more than those two body parts." (*Crittenden, supra*, 2020 U.S.Dist. Lexis 151950, at p. *20.) It "includes the language of the entire body." (*Ibid*.) Thus, even without being able to see jurors' noses and mouths, counsel may still adequately assess demeanor by observing various aspects of body language and tone, such as whether a prospective juror hesitates or has unusual pauses, maintains eye contact or rolls his/her eyes, or shifts and squirms during questioning. In addition, counsel still have access to the traditional tools to detect bias, including juror questionnaires and follow-up questioning during voir dire. Accordingly, we agree with the federal courts that allowing prospective jurors to wear masks during voir dire in this case did not significantly hinder observation of their demeanor and that the trial court's mask protocol was warranted to protect courtroom participants from COVID-19. (*Tagliaferro, supra*, 531 F.Supp.3d at pp. 851-852; *Crittenden*, at pp. *23-24.)

We find additional support for this conclusion in three recent California cases, which concluded that requiring witnesses to wear masks while testifying during the pandemic did not violate the defendant's Sixth Amendment confrontation rights. (*Alvarez, supra*, 75 Cal.App.5th 28; *Lopez, supra*, 75 Cal.App.5th 227; *People v.*

8

*Edwards* (2022) 76 Cal.App.5th 523.)  Those courts held that although the constitutional right of confrontation is important, it is not absolute.  (*Alvarez*, at p. 35; *Lopez*, at pp. 230, 233.)  Thus, although there is a preference for face-to-face confrontation, this default setting must occasionally yield where denial of confrontation is necessary to further an important public policy and the reliability of the testimony is otherwise assured.  (*Lopez*, at pp. 232-233.)  Because the masking requirement for witnesses furthered an important public policy, and did so without materially undermining the jury's ability to assess witness credibility, the courts found no confrontation violation.  (*Alvarez*, at pp. 36-39; *Lopez*, at pp. 233-236; *Edwards, supra*, at pp. 526-527.)

If an order requiring testifying *witnesses* to wear a mask does not violate a defendant's right to a fair trial, we fail to see how giving *prospective jurors* the choice to wear a mask could do so.  (*United States v. Robertson* (D.N.M. Nov. 13, 2020, No. 17-CR-02949-MV-1) 2020 U.S.Dist. Lexis 212449, at pp. *2-4 [nonpub. opn.].)  While assessing the demeanor of prospective jurors during voir dire is important, it is not as important as the jury's need to assess the demeanor of testifying witnesses.  Accordingly, *Alvarez*, *Lopez*, and *Edwards* support our conclusion that the trial court's mask policy did not violate defendant's constitutional right to a fair trial.

II

*Juror Social Distancing*

Defendant also contends that the trial court violated his constitutional rights by requiring members of the jury to sit in the public gallery instead of the jury box.  Defendant contends that the court's seating arrangements for jurors violated his Fifth and Sixth Amendment rights to due process and to confront witnesses because it interfered with (1) defendant's (and the court's) ability to observe the demeanor of jurors during jury selection and trial; and (2) jurors' ability to observe the demeanor of defendant and his accusers during trial.

Defendant concedes that he failed to object to the seating arrangements at trial, but argues this failure should be excused because he objected to the court's mask protocol and objecting to both measures would have been futile. Alternatively, if we find the issue was forfeited, defendant contends his counsel provided ineffective assistance by failing to object.

Initially, we agree that defendant forfeited any challenge to the juror seating arrangements because he failed to raise a timely and specific objection in the trial court and we are not persuaded that an objection would have been futile. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564; *American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789.) We therefore proceed to consider whether his attorney's failure to raise the issue constituted ineffective assistance of counsel.

" 'To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980.) "If the defendant makes an insufficient showing on either component, the claim must fail. [Citation.]" (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1158.)

Judicial scrutiny of counsel's performance is highly deferential. (*Strickland v. Washington* (1984) 466 U.S. 668, 689 [80 L.Ed.2d 674, 694].) "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." (*Ibid.*) "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the

evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" (*Ibid*.) Where, as here, the record sheds no light on why counsel acted or failed to act in the manner challenged, the defendant must show there was no conceivable reason for the challenged act or omission. (*People v. Lewis* (2001) 25 Cal.4th 610, 674-675.)

On this record, we cannot conclude that counsel's failure to object to the courtroom seating arrangements amounted to ineffective assistance. Defendant has not cited any authority, and we have found none, holding that jurors must be seated in the jury box or within a certain distance of the witness stand. While we acknowledge that counsel must be able to assess the demeanor of jurors, and jurors must be able to assess the demeanor of witnesses, there is nothing in this record to suggest the seating arrangement used in this case prevented that from occurring. There is no evidence, for example, that jurors could not see or hear the witnesses during trial. Defendant simply speculates that seating jurors in the gallery inhibited these functions. But a claim of ineffective assistance cannot be based on speculation. (*People v. Quinn* (2001) 86 Cal.App.4th 1290, 1295.)

"Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581; accord, *People v. Campbell* (2020) 51 Cal.App.5th 463, 504.) Here, there is a rational explanation for counsel's decision not to object. Counsel reasonably could have determined—on facts not developed in this record—that there was no basis to object. (*Kocontes, supra*, 86 Cal.App.5th at pp. 870-873 [concluding that social distancing protocols, including jurors seated throughout the courtroom, did not deprive defendant of his rights to a fair trial, to confront witnesses, or to present a defense].)

Because defendant has not carried his burden of showing there is no conceivable reason for counsel's lack of objection, we reject defendant's claim of ineffective assistance of counsel. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1173 [counsel not obligated to advance unmeritorious arguments], superseded by statute on other grounds as stated in *People v. Boyce* (2014) 59 Cal.4th 672, 707; *People v. Lucero* (2000) 23 Cal.4th 692, 732 [same].)

### III

### *Defendant's Facial Covering*

Defendant also argues that his counsel rendered ineffective assistance of counsel by asking him to wear a face mask during trial.

Initially, we observe that if error occurred, it was invited by defense counsel, who discussed the issue of masking with defendant and gained defendant's approval. The trial court even confirmed with defendant that he was comfortable wearing a mask during trial. It would be anomalous to allow defendant to gain a reversal based upon an act that defendant either requested or acquiesced in for his own safety. (*People v. Majors* (1998) 18 Cal.4th 385, 409; *Kocontes, supra*, 86 Cal.App.5th at p. 879; *People v. Snow* (2003) 30 Cal.4th 43, 116.)

In any event, defendant has failed to carry his burden of showing ineffective assistance of counsel. Defendant has not cited any authority supporting the proposition that a defendant's face must be fully visible to witnesses and the jury throughout trial.[3] There are cases supporting the opposite conclusion, however. (See *Tagliaferro, supra*, 531 F.Supp.3d at p. 850; *Lopez v. Gamboa* (C.D.Cal. Dec. 15, 2022, No. CV 22-4281-

---

[3]   The cases on which defendant relies address how the administration of antipsychotic medications to a defendant, or how blocking the defendant from seeing complaining witnesses while they testify, may interfere with the defendant's right to confront witnesses. (See *Riggins v. Nevada* (1992) 504 U.S. 127, 129 [118 L.Ed.2d 479, 485]; *Coy v. Iowa* (1988) 487 U.S. 1012, 1014 [101 L.Ed.2d 857, 862]; *People v. Gurule* (2002) 28 Cal.4th 557, 598.) These cases are therefore distinguishable.

JEM) 2022 U.S.Dist. Lexis 226427, at pp. *16-17 [nonpub. opn.]; see also *People v. Garcia* (1984) 160 Cal.App.3d 82, 91 [noting that a defendant's nontestimonial conduct ordinarily does not fall within the definition of relevant evidence].) We find these cases persuasive.

Further, to the extent requiring a defendant to wear a mask raises constitutional concerns, we find no constitutional violation here. Defendant's trial was held at the height of the COVID-19 pandemic, before vaccines were widely available, when the best scientific evidence demonstrated that wearing face masks was effective at reducing the spread of the virus. (*Lopez, supra*, 75 Cal.App.5th at p. 233.) Defendant had an underlying health condition that placed him at higher risk for complications from the virus, and therefore defense counsel had a compelling reason to ask defendant to wear a mask during trial. In addition, the reliability of the testimony provided at trial was otherwise assured. Under these circumstances, we cannot say counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Accordingly, we reject his claim of ineffective assistance. (*People v. Lucero, supra*, 23 Cal.4th at p. 732 [counsel not incompetent for failure to make meritless objections].)

IV

*Cumulative Error*

Defendant contends that even if no single error requires reversal, the cumulative effect of the errors does. Because we have found no error, we reject the claim of cumulative prejudice as well. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1020.)

DISPOSITION

The judgment is affirmed.

                                                          KRAUSE         , J.

We concur:

      HULL           , Acting P. J.

      RENNER         , J.